1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9    BALATON CONDOMINIUM ASSOCIATION, a
Washington nonprofit corporation,

No.

10                                                  Plaintiff,

11          v.

**NOTICE OF REMOVAL OF CIVIL
ACTION UNDER 28 U.S.C. §
1441(b) (DIVERSITY)**

12   BALATON CONDOMINIUM, LLC, a Delaware
limited liability company; EQUITY

13   RESIDENTIAL PROPERTIES MANAGEMENT
CORP., a Delaware corporation; ERP

14   OPERATING LIMITED PARTNERSHIP, an
Illinois limited partnership; EQUITY

15   RESIDENTIAL, a Maryland real estate investment
trust; DAVID ATTLESON, individually, and

16   JANE DOE ATTLESON, individually, and the
marital community composed thereof; SUSAN

17   WIEMER, individually, and JOHN DOE
WIEMER, individually, and the marital

18   community composed thereof; AMY
HIMMERICH, individually, and JOHN DOE

19   HIMMERICH, individually, and the marital
community composed thereof; TAMMY

20   SCULLY, individually, and JOHN DOE
SCULLY, individually, and the marital community

21   composed thereof; MARK GOLDSTEIN,
individually, and JANE DOE GOLDSTEIN,

22   individually, and the marital community composed
thereof; MICHAEL MCHUGH, individually, and

23   JANE DOE MCHUGH, individually, and the
marital community composed thereof; NATALIA

24   PICOULAS, individually, and JOHN DOE
PICOULAS, individually, and the marital

25   community composed thereof; JOHN DRYK,
individually, and JANE DOE DRYK, individually,

26   and the marital community composed thereof;

NOTICE OF REMOVAL - 1
Case No.

50814205.2

| | |
|---|---|
| MARK PARRELL, individually, and JANE DOE PARRELL, individually, and the marital community composed thereof; ROBERT TANAKA, individually, and JANE DOE TANAKA, individually, and the marital community composed thereof; BARBARA SHUMAN, individually, and JOHN DOE SHUMAN, individually, and the marital community composed thereof; and DOES 1-50, | [King County Superior Court Case No. 07-2-14061-1 SEA] |

Defendants.

TO:   The Honorable Judges of the United States District Court of the Western District of Washington

Pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, Defendants Balaton Condominium, LLC, Equity Residential Properties Management Corp., ERP Operating Limited Partnership, and Equity Residential hereby give notice of removal of the above-captioned action, currently pending in the Superior Court of King County, Washington to the United States District Court for the Western District of Washington at Seattle on the grounds of diversity jurisdiction.

The following statement is submitted pursuant to 28 U.S.C. § 1446(a):

1.      On May 1, 2007, Plaintiff Balaton Condominium Association filed a Complaint with the Clerk of the Superior Court of King County, Washington (the "State Court Action"). The State Court Action was assigned Case No. 07-2-14061-1 SEA. A true and correct copy of the Case Information Coversheet, Order Setting Civil Case Schedule; Summons, and Complaint is attached as Exhibit A. No other pleadings have been filed in the State Court Action.

2.      To date, on information and belief, Plaintiff has not served any of the Defendants with a copy of the summons and complaint. Since the 30 day period of time within which removal must be filed has not yet commenced, this Notice is timely filed pursuant to 28 U.S.C. § 1446(b).

3.      Plaintiff's Complaint asserts claims against Defendants for (1) Breach of Express and Implied Warranty Under the Washington Condominium Act; (2) Breach of Purchase and Sale Agreement Contracts; (3) Breach of Property/Real Estate Management Contract; (4)

NOTICE OF REMOVAL - 2
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50814205.2

Negligent Property/Real Estate Management; (5) Breach of Fiduciary Duty; (6) Liability Under RCW 64.34.344 and the Declaration; (7) Violation of the Consumer Protection Act; (8) Fraudulent Concealment; (9) Liability Under RCW 64.34.405, 64.34.410 and 64.34.415; (10) Violation of RCW 19.40.041 and 19.40.051; (11) Relief for Mutual Mistake; and (12) Alter Ego/Corporate Disregard Liability.

4.      Plaintiff's prayer for relief demands damages for each claim, including treble damages under the Consumer Protection Act "of a minimum of $10,000 per unit for each and every one of the 108 Project unit owners ...." Complaint at 41, IV, Prayer for Relief, paragraph 1(g). Damages under this claim alone, if proved, would exceed $324,000. In addition, Plaintiff seeks costs and attorney's fees. On its face, Plaintiff's complaint seeks damages in excess of the $75,000 jurisdictional amount for diversity jurisdiction.

5.      Based upon information and belief and the allegations in the complaint, Plaintiff BCL is a Washington nonprofit corporation with its principal place of business in King County. Therefore, BCL is deemed a citizen of Washington for purposes of 28 U.S.C. § 1332. 28 U.S.C. § 1332(c)(1).

6.      Defendant Balaton Condominium, LLC ("Balaton") is a Delaware limited liability company. The sole member of Balaton was Equity Residential Properties Management Corp., which is a Delaware corporation with its principal place of business in Chicago, Illinois. Therefore, Balaton is deemed a citizen of Delaware and Illinois for purposes of 28 U.S.C. § 1332. 28 U.S.C. § 1332(c)(1).

7.      Defendant Equity Residential Properties Management Corp. ("Equity") is a Delaware corporation with its principal place of business in Chicago, Illinois. Therefore, Equity is deemed a citizen of Delaware and Illinois for purposes of 28 U.S.C. § 1332. 28 U.S.C. § 1332(c)(1).

8.      Defendant ERP Operating Limited Partnership "(ERP") is a Illinois limited partnership. ERP's general partner is Equity Residential, a Maryland real estate investment

NOTICE OF REMOVAL - 3
Case No.

50814205.2

1   trust. ERP includes limited partners that are citizens of Washington. Plaintiff's sole basis for

2   suing ERP is its claim that ERP is the "alter-ego" or "co-declarant" of Balaton Condominium

3   LLC, ERPMC, and Equity Residential. *See LLC's Opposition to Defendant's Motion to*

4   *Dismiss or Stay Claims,* Case No. C07-0564 JCC, Section II.A. Such general allegations of

5   alter-ego type liability alone are insufficient to defeat a fraudulent joinder claim. *See Plaintiff*

6   *Balaton Condominium, LLC's's Motion to Consolidate and Motion re:  Fraudulent Joinder and*

7   *FRCP 21 Severance,* Case No. 07-CV-564 JCC, Section V.B., filed on May 21, 2007.

8        9.     Defendant Equity Residential is a Maryland real estate investment trust business.

9   The trustees of Equity Residential are residents of states other than the State of Washington,

10   including the States of Illinois, North Carolina, Nevada, Arizona and Georgia.  Therefore,

11   Equity Residential is deemed a citizen of Maryland and Illinois, North Carolina, Nevada,

12   Arizona and Georgia for purposes of 28 U.S.C. § 1332. 28 U.S.C. § 1332(c)(1).

13        10.    Based on information and belief and the allegations in the complaint, Defendant

14   David Attleson is an individual residing in Washington State.  Mr. Attleson is not a necessary

15   party to this litigation under Fed. R. Civ. P. 21.  The Association's complaint sets forth no

16   allegation of wrongdoing by Mr. Attleson that is not alleged against his former employer,

17   Equity Residential Properties Management Corp., a non-Washington citizen.  *See Declaration*

18   *of Mark S. Goldstein supporting Plaintiff Balaton Condominium, LLC's Opposition to*

19   *Defendant's Motion to Dismiss or Stay Claims,* Case No. C07-0564 JCC, Section II.A;

20   *Plaintiff's Motion to Consolidate and Motion re:  Fraudulent Joinder and FRCP 21 Severance,*

21   Case No. 07-CV-564 JCC, Section V.C., filed on May 21, 2007.

22        11.    Based on information and belief and the allegations in the complaint, Defendant

23   Susan Wiemer is an individual residing in Illinois.  She is a citizen of Illinois for jurisdictional

24   purposes and thus diversity jurisdiction exists.

25        12.    Based on information and belief and the allegations in the complaint, Defendant

26   Amy Himmerich is an individual residing in Washington State.  Ms. Himmerich is not a

NOTICE OF REMOVAL - 4
Case No.

50814205.2

1    necessary party to this litigation under Fed. R. Civ. P. 21. The Association's complaint sets
2    forth no allegation of wrongdoing by Ms. Himmerich that is not alleged against her former
3    employer, Equity Residential Properties Management Corp., a non-Washington citizen. *See*
4    *Plaintiff Balaton Condominium, LLC's Opposition to Defendant's Motion to Dismiss or Stay*
5    *Claims,* Case No. C07-0564 JCC, Section II.A; *Plaintiff's Motion to Consolidate and Motion*
6    *re: Fraudulent Joinder and FRCP 21 Severance,* Case No. 07-CV-564 JCC, Section V.C., filed
7    on May 21, 2007.

8        13.    Based on information and belief and the allegations in the complaint, Defendant
9    Tammy Scully is an individual residing in Illinois.   She is a citizen of Illinois for jurisdictional
10   purposes and thus diversity jurisdiction exists.

11       14.    Based on information and belief and the allegations in the complaint, Defendant
12   Mark Goldstein is an individual residing in Illinois.   He is a citizen of Illinois for jurisdictional
13   purposes and thus diversity jurisdiction exists.

14       15.    Based on information and belief and the allegations in the complaint, Defendant
15   Michael McHugh is an individual residing in Illinois. He is a citizen of Illinois for jurisdictional
16   purposes and thus diversity jurisdiction exists.

17       16.    Based on information and belief and the allegations in the complaint, Defendant
18   Natalia Picoulas is an individual residing in Illinois. She is a citizen of Illinois for jurisdictional
19   purposes and thus diversity jurisdiction exists.

20       17.    Based on information and belief and the allegations in the complaint, Defendant
21   John Dryk is an individual residing in Illinois.   He is a citizen of Illinois for jurisdictional
22   purposes and thus diversity jurisdiction exists.

23       18.    Based on information and belief and the allegations in the complaint, Defendant
24   Mark Parrell is an individual residing in Illinois.   He is a citizen of Illinois for jurisdictional
25   purposes and thus diversity jurisdiction exists.

26

NOTICE OF REMOVAL - 5
Case No.

50814205.2

1
2
3

19.     Based on information and belief and the allegations in the complaint, Defendant Robert Tanaka is an individual residing in Illinois.  He is a citizen of Illinois for jurisdictional purposes and thus diversity jurisdiction exists.

4
5
6

20.     Based on information and belief and the allegations in the complaint, Defendant Barbara Shuman is an individual residing in Illinois.  She is a citizen of Illinois for jurisdictional purposes and thus diversity jurisdiction exists.

7
8
9
10
11
12
13

21.     The undersigned counsel represents the four business entities named defendants in this action, Balaton Condominium, LLC, Equity Residential Properties Management Corp., ERP Operating Limited Partnership, and Equity Residential.  Counsel is authorized to represent that these defendants have consented to removal.   While the other defendants have not been served,  the four business entities named as defendants have no reason to believe that any of the individually named defendants would object to removal, as they are nominal defendants. (See Declaration of Jeffrey G. Frank).

14
15
16

22.     Plaintiff has named additional fictitious defendants identified as "Does 1-50." Pursuant to 28 U.S.C. § 1441(a), "[f]or purposes of removal … the citizenship of defendants sued under fictitious names shall be disregarded."

17
18
19
20
21

23.     This Notice of Removal will be promptly served upon Plaintiff's counsel and filed with the Clerk of the Superior Court of King County, Washington.  See 28 U.S.C. § 1446(a), (d).  Defendants will also file with the Clerk of the Superior Court of King County, Washington a Notice of Filing Removal of Civil Action, pursuant to 28 U.S.C. § 1446(d).  A copy of the Notice of Filing of Notice of Removal is attached hereto as Exhibit B.

22
23
24
25

24.     For these reasons, the diversity of citizenship requirement of 28 U.S.C. § 1332 is met and the claims may be removed to this Court under 28 U.S.C. § 1441.  This action should therefore proceed in the United States District Court for the Western District of Washington, as an action properly removed.

26

NOTICE OF REMOVAL - 6
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50814205.2

1    DATED this 21st day of May, 2007.

2                                        FOSTER PEPPER PLLC

3

4                                        s/s Jeffrey G. Frank
                                         Jeffrey G. Frank WSBA #16287
5                                        Gregory A.V. Clark, WSBA #28832
                                         Attorneys for Defendants Balaton
6                                        Condominium, LLC, Equity Residential
                                         Properties Management Corp., ERP Operating
7                                        Limited Partnership, and Equity Residential

8

                                         HARPER | HAYES PLLC
9

10
                                         s/s Todd C. Hayes
11                                       Todd C. Hayes, WSBA No. 26361
                                         Gregory L. Harper, WSBA No. 27311
12                                       Attorneys for Defendants Balaton
                                         Condominium, LLC, Equity Residential
13                                       Properties Management Corp., ERP Operating
                                         Limited Partnership, and Equity Residential
14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF REMOVAL - 7
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50814205.2

# Certificate of Service

The undersigned certifies that on Monday, May 21, 2007, I caused to be served the foregoing document to the following parties via hand delivery and electronic mail:

**NAME:**
John C. Siegel
Jesse D. Miller
Stanislaw Ashbaugh, LLP
4400 Columbia Center
701 Fifth Avenue
Seattle, WA  98104-7012
BUSINESS    (206)          386-5900
FAX    (206) 344-7400

**EMAIL ADDRESS:**
johns@stanislaw-ashbaugh.com
jessem@stanislaw-ashbaugh.com

**REPRESENTING:**    Balaton Condominium Association


DATED *May 21, 2007* in Seattle, Washington.


s/s Elen A. Sale
Elen A. Sale


NOTICE OF REMOVAL - 8
Case No.

# EXHIBIT A

FILED

FILED
07 MAY -1 PM 3: 39
KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

KING COUNTY SUPERIOR COURT
BARBARA MINER
DIRECTOR & SUPERIOR CT CLERK
SEATTLE WA

07-2-14061-1

| Rcpt. Date | Acct. Date | Time |
|---|---|---|
| 05/01/2007 | 05/01/2007 | 03:41 PM |

| Receipt/Item # | Tran-Code | Docket-Code |
|---|---|---|
| 2007-03-08795/01 | 1100 | $FFR |
| Cashier: RCF | | |

Paid By: STANISLAW, ASHBAUGH
  Transaction Amount:                    $200.00

**KING COUNTY SUPERIOR COURT
CASE ASSIGNMENT DESIGNATION
and
CASE INFORMATION COVER SHEET
(cics)**

In accordance with LR82(e), a faulty document fee of $15 will be assessed to new case filings missing this sheet pursuant to King County Code 4.71.100.

CASE NUMBER:    **0 7 - 2 - 1 4 0 6 1 - 1 SEA**

CASE CAPTION:  Balaton Condominium Association v. Balaton Condominium LLC, et al.

I certify that this case meets the case assignment criteria, described in King County LR 82(e), for the:

___XX___    Seattle Area, defined as:

> All of King County north of Interstate 90 and including all of the Interstate 90 right-of-way; all the cities of Seattle, Mercer Island, Bellevue, Issaquah and North Bend; and all of Vashon and Maury Islands.

_____    Kent Area, defined as:

> All of King County south of Interstate 90 except those areas included in the Seattle Case Assignment Area.

_____
Signature of Petitioner/Plaintiff
or

_____
John C. Siegel
Signature of Attorney for
Petitioner/Plaintiff

29866_____
WSBA Number

_____
Date

May 1, 2007_____
Date

L: forms/cashiers/cics
Rev 01/05

1

**KING COUNTY SUPERIOR COURT**
**CASE ASSIGNMENT DESIGNATION**
*and*
**CASE INFORMATION COVER SHEET**

Please check one category that best describes this case for indexing purposes. Accurate case indexing not only saves time but helps in forecasting judicial resources. A faulty document fee of $15 will be assessed to new case filings missing this sheet pursuant to Administrative Rule 2 and King County Code 4.71.100.

**APPEAL/REVIEW**
- [ ] Administrative Law Review (ALR 2)*
- [ ] DOL Implied Consent—Test Refusal –only RCW 46.20.308 (DOL 2)*
- [ ] DOL- all other appeals (ALR 2) *

**CONTRACT/COMMERCIAL**
- [✓] Breach of Contract (COM 2)*
- [ ] Commercial Contract (COM 2)*
- [ ] Commercial Non-Contract (COL 2)*
- [ ] Meretricious Relationship (MER 2)*
- [ ] Third Party Collection (COL 2)*

**DOMESTIC RELATIONS**
- [ ] Annulment/Invalidity (INV3)*
  with dependent children? Y / N; wife pregnant? Y / N
- [ ] Child Custody (CUS 3)*
- [ ] Nonparental Custody (CUS 3)*
- [ ] Dissolution With Children (DIC 3)*
- [ ] Dissolution With No Children (DIN 3)*
  wife pregnant? Y / N
- [ ] Enforcement/Show Cause- Out of County (MSC 3)
- [ ] Establish Residential Sched/Parenting Plan(PPS 3)* ££
- [ ] Establish Supprt Only (PPS 3)* ££
- [ ] Legal Separation (SEP 3)*
  with dependent children? Y / N; wife pregnant? Y / N
- [ ] Mandatory Wage Assignment (MWA 3)
- [ ] Modification (MOD 3)*
- [ ] Modification - Support Only (MDS 3)*
- [ ] Out-of-state Custody Order Registration (FJU 3)
- [ ] Out-of-State Support Court Order Registration (FJU 3)
- [ ] Reciprocal, Respondent Out of County (ROC 3)
- [ ] Reciprocal, Respondent in County (RIC 3)
- [ ] Relocation Objection/Modification (MOD 3)*

**ADOPTION/PATERNITY**
- [ ] Adoption (ADP 5)
- [ ] Challenge to Acknowledgment of Paternity (PAT 5)*
- [ ] Challenge to Denial of Paternity (PAT 5)*
- [ ] Confidential Intermediary (MSC 5)
- [ ] Establish Parenting Plan-Existing King County Paternity (MSC 5)*
- [ ] Initial Pre-Placement Report (PPR 5)
- [ ] Modification (MOD 5)*
- [ ] Modification-Support Only (MDS 5)*
- [ ] Paternity, Establish/Disestablish (PAT 5)*
- [ ] Paternity/UIFSA (PUR 5)*
- [ ] Out-of-State Custody Order Registration (FJU 5)
- [ ] Out-of-State Support Order Registration (FJU5)
- [ ] Relinquishment (REL 5)
- [ ] Relocation Objection/Modification (MOD 5)*
- [ ] Rescission of Acknowledgment of Paternity (PAT 5)*
- [ ] Rescission of Denial of Paternity (PAT 5)*
- [ ] Termination of Parent-Child Relationship (TER 5)

**DOMESTIC VIOLENCE/ANTIHARASSMENT**
- [ ] Civil Harassment (HAR 2)
- [ ] Confidential Name Change (CHN 5)
- [ ] Domestic Violence (DVP 2)
- [ ] Domestic Violence with Children (DVC 2)
- [ ] Foreign Protection Order (FPO 2)
- [ ] Vulnerable Adult Protection (VAP 2)

££ Paternity Affidavit or Existing/Paternity is not an issue and NO other case exists in King County* The filing party will be given an appropriate case schedule.    ** Case schedule will be issued after hearing and findings.

L: forms/cashiers/cics
Rev 01/05

2

FILED

07 MAY -1 PM 3: 39

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

# IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
# IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| BALATON CONDOMINIUM ASSOCIATION | NO.  07-2-14061-1    SEA |
| | Order Setting Civil Case Schedule (*ORSCS) |
| **vs**                           Plaintiff(s) | |
| BALATON CONDOMINIUM LLC, ET AL | ASSIGNED JUDGE  Hayden            16 |
| | FILE DATE:                  05/01/2007 |
|                           Defendant(s) | TRIAL DATE:               10/13/2008 |

A civil case has been filed in the King County Superior Court and will be managed by the Case Schedule on Page 3 as ordered by the King County Superior Court Presiding Judge.

## I. NOTICES

**NOTICE TO PLAINTIFF:** The Plaintiff may serve a copy of this **Order Setting Case Schedule (*Schedule*)** on the Defendant(s) along with the **Summons and Complaint/Petition**. Otherwise, the Plaintiff shall serve the *Schedule* on the Defendant(s) within 10 days after the later of: (1) the filing of the **Summons and Complaint/Petition** or (2) service of the Defendant's first response to the **Complaint/Petition**, whether that response is a **Notice of Appearance**, a response, or a Civil Rule 12 (CR 12) motion. The *Schedule* may be served by regular mail, with proof of mailing to be filed promptly in the form required by Civil Rule 5 (CR 5).

*"I understand that I am required to give a copy of these documents to all parties in this case."*

_____          |  _____

Print Name                                          Sign Name

Order Setting Civil Case Schedule (*ORSCS)                              REV. 7/200    1

## I. NOTICES (continued)

**NOTICE TO ALL PARTIES:**
All attorneys and parties should make themselves familiar with the King County Local Rules [*KCLR*] --
especially those referred to in this *Schedule*, it will be necessary for
attorneys and parties to pursue their cases vigorously from the day the case is filed. For example,
discovery must be undertaken promptly in order to comply with the deadlines for joining additional parties,
claims, and defenses, *for disclosing possible witnesses [See KCLR 26*], and for meeting the discovery
cutoff date [*See KCLR 37(g)*].

**CROSSCLAIMS, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS:**
A filing fee of $200 must be paid when any answer that includes additional claims is filed in an existing
case.

**SHOW CAUSE HEARINGS FOR <u>CIVIL</u> CASES** [King County Local Rule 4(g)]
A Confirmation of Joinder, Claims and Defenses or a Statement of Arbitrability must be filed by the
deadline in the schedule. A review of the case will be undertaken to confirm service of the original
complaint and to verify that all answers to claims, counterclaims and cross-claims have been filed. If
those mandatory pleadings are not in the file, a *Show Cause Hearing* will be set before the Chief Civil or
RJC judge. The Order to Show Cause will be mailed to all parties and designated parties or counsel are
required to attend.

**PENDING DUE DATES CANCELED BY FILING PAPERS THAT RESOLVE THE CASE:**
When a final decree, judgment, or order of dismissal of <u>all parties and claims</u> is filed with the Superior
Court Clerk's Office, and a courtesy copy delivered to the assigned judge, all pending due dates in this
*Schedule* are automatically canceled, including the scheduled Trial Date. It is the responsibility of the
parties to 1) file such dispositive documents within 45 days of the resolution of the case, and 2) strike any
pending motions by notifying the bailiff to the assigned judge.

Parties may also authorize the Superior Court to strike all pending due dates and the Trial Date by filing a
*Notice of Settlement* pursuant to KCLR 41, and forwarding a courtesy copy to the assigned judge. If a final
decree, judgment or order of dismissal of <u>all parties and claims</u> is not filed by 45 days after a *Notice of
Settlement*, the case may be dismissed with notice.

**If you miss your scheduled Trial Date**, the Superior Court Clerk is authorized by KCLR 41(b)(2)(A) to
present an *Order of Dismissal*, without notice, for failure to appear at the scheduled Trial Date.

**NOTICES OF APPEARANCE OR WITHDRAWAL AND ADDRESS CHANGES:**
*All parties to this action must keep the court informed of their addresses.* When a Notice of
Appearance/Withdrawal or Notice of Change of Address is filed with the Superior Court Clerk's Office,
parties must provide the assigned judge with a courtesy copy.

**ARBITRATION FILING <u>AND</u> TRIAL DE NOVO POST ARBITRATION FEE:**
A Statement of Arbitrability must be filed by the deadline on the schedule **if the case is subject to
mandatory arbitration** and service of the original complaint and all answers to claims, counterclaims and
cross-claims have been filed. If mandatory arbitration is required after the deadline, parties must obtain
an order from the assigned judge transferring the case to arbitration. **Any party filing a Statement must
pay a $220 arbitration fee**. If a party seeks a trial de novo when an arbitration award is appealed, a fee of
$250 and the request for trial de novo must be filed with the Clerk's Office Cashiers.

**NOTICE OF NON-COMPLIANCE FEES:**
All parties will be assessed a fee authorized by King County Code 4.71.050 whenever the Superior Court
Clerk must send notice of non-compliance of schedule requirements <u>and/or</u> Local Rule 41.

**King County Local Rules are available for viewing at www.metrokc.gov/kcscc.**

Order Setting Civil Case Schedule (*ORSCS)                                    REV. 7/200   2

## II. CASE SCHEDULE

| CASE EVENT | DEADLINE or EVENT DATE | Filing Needed |
|---|---|---|
| Case Filed and Schedule Issued. | Tue  05/01/2007 | * |
| Confirmation of Service [See KCLR 4.1]. | Tue  05/29/2007 | * |
| Last Day for Filing Statement of Arbitrability without a Showing of Good Cause for Late Filing [See KCLMAR 2.1(a) and Notices on Page 2]. **$220 arbitration fee must be paid** | Tue  10/09/2007 | * |
| **DEADLINE to file Confirmation of Joinder if not subject to Arbitration.** [See KCLR 4.2(a) and Notices on Page 2]. **Show Cause hearing will be set if Confirmation is not filed, or if the Confirmation does not have all signatures, or if all answers have not been filed, or judgment on default has not been filed, or Box 2 is checked.** | Tue  10/09/2007 | * |
| DEADLINE for Hearing Motions to Change Case Assignment Area. [See KCLR 82(e)] | Tue  10/23/2007 | |
| DEADLINE for Disclosure of Possible Primary Witnesses [See KCLR 26(b)]. | Mon  05/12/2008 | |
| DEADLINE for Disclosure of Possible Additional Witnesses [See KCLR 26(b)]. | Mon  06/23/2008 | |
| DEADLINE for Jury Demand [See KCLR 38(b)(2)]. | Mon  07/07/2008 | * |
| DEADLINE for Setting Motion for a Change in Trial Date [See KCLR 40(e)(2)]. | Mon  07/07/2008 | * |
| DEADLINE for Discovery Cutoff [See KCLR 37(g)]. | Mon  08/25/2008 | |
| DEADLINE for Engaging in Alternative Dispute Resolution [See KCLR 16(c)]. | Mon  09/15/2008 | |
| DEADLINE for Exchange Witness & Exhibit Lists & Documentary Exhibits [See KCLR 16(a)(4)]. | Mon  09/22/2008 | |
| DEADLINE to file Joint Confirmation of Trial Readiness [See KCLR 16(a)(2)] | Mon  09/22/2008 | * |
| DEADLINE for Hearing Dispositive Pretrial Motions [See KCLR 56; CR 56]. | Mon  09/29/2008 | |
| Joint Statement of Evidence [See KCLR 16(a)(5)]. | Mon  10/06/2008 | * |
| Trial Date [See KCLR 40]. | Mon  10/13/2008 | |

### III. ORDER

Pursuant to King County Local Rule 4 [KCLR 4], IT IS ORDERED that the parties shall comply with the schedule listed above. Penalties, including but not limited to sanctions set forth in Local Rule 4(g) and Rule 37 of the Superior Court Civil Rules, may be imposed for non-compliance. It is FURTHER ORDERED that the party filing this action **must** serve this Order Setting Civil Case Schedule and attachment on all other parties.

DATED:   05/01/2007

PRESIDING JUDGE

Order Setting Civil Case Schedule (*ORSCS)

REV. 7/200    3

**IV. ORDER ON CIVIL PROCEEDINGS FOR ASSIGNMENT TO JUDGE**
**READ THIS ORDER PRIOR TO CONTACTING YOUR ASSIGNED JUDGE**
**This case is assigned to the Superior Court Judge whose name appears in the caption of this**
*Schedule.* **The assigned Superior Court Judge will preside over and manage this case for all**
**pre-trial matters.**
**COMPLEX LITIGATION:** If you anticipate an unusually complex or lengthy trial, please notify the
assigned court as soon as possible.
**The following procedures hereafter apply to the processing of this case:**
**APPLICABLE RULES:**
a. Except as specifically modified below, all the provisions of King County Local Rules 4 through 26 shall
apply to the processing of civil cases before Superior Court Judges.
**CASE SCHEDULE AND REQUIREMENTS:**
A. Show Cause Hearing: A Show Cause Hearing will be held before the Chief Civil/Chief RJC judge if the
case does not have confirmation of service on all parties, answers to all claims, crossclaims, or
counterclaims as well as the confirmation of joinder or statement of arbitrability filed before the deadline
in the attached case schedule. All parties will receive an *Order to Show Cause* that will set a specific
date and time for the hearing. Parties and/or counsel who are required to attend will be named in the
order.
B. Pretrial Order: An order directing completion of a Joint Confirmation of Trial Readiness Report will be
mailed to all parties approximately six (6) weeks before trial. **This order will contain deadline dates for**
**the pretrial events listed in King County Local Rule 16:**
1) Settlement/Mediation/ADR Requirement;
2) Exchange of Exhibit Lists;
3) Date for Exhibits to be available for review;
4) Deadline for disclosure of witnesses;
5) Deadline for filing Joint Statement of Evidence;
6) Trial submissions, such as briefs, Joint Statement of Evidence, jury instructions;
7) voir dire questions, etc;
8) Use of depositions at trial;
9) Deadlines for nondispositive motions;
10) Deadline to submit exhibits and procedures to be followed with respect to exhibits;
11) Witnesses -- identity, number, testimony;
C. Joint Confirmation regarding Trial Readiness Report: No later than twenty one (21) days before the
trial date, parties shall complete and file (with a copy to the assigned judge) a joint confirmation report
setting forth whether a jury demand has been filed, the expected duration of the trial, whether a
settlement conference has been held, and special problems and needs (e.g. interpreters, equipment),
etc. If parties wish to request a CR 16 conference, they must contact the assigned court.
Plaintiff/petitioner's counsel is responsible for contacting the other parties regarding said report.
D. Settlement/Mediation/ADR:
**1) Forty five (45) days before the Trial Date**, counsel for plaintiff shall submit a written settlement
demand. Ten (10) days after receiving plaintiff's written demand, counsel for defendant shall respond
(with a counteroffer, if appropriate).
**2) Twenty eight (28) days before the Trial Date,** a settlement/mediation/ADR conference shall have
been held. **FAILURE TO COMPLY WITH THIS SETTLEMENT CONFERENCE REQUIREMENT MAY**
**RESULT IN SANCTIONS.**
E. Trial: Trial is scheduled for 9:00 a.m. on the date on the *Schedule or as soon thereafter as convened*
*by the court.* The Friday before trial, the parties should access the King County Superior Court website at
www.metrokc.gov/kcsc to confirm trial judge assignment. Information can also be obtained by calling
(206) 205-5984.

**MOTIONS PROCEDURES:**
**A. Noting of Motions**
**Dispositive Motions: All Summary Judgment or other motions that dispose of the case in whole or in part will be heard with oral argument before the assigned judge. The moving party must arrange with the courts a date and time for the hearing, consistent with the court rules. King County Local Rule 7 and King County Local Rule 56 govern procedures for all summary judgment or other motions that dispose of the case in whole or in part. The local rules can be found at www.metrokc.gov/kcscc.**

**Nondispositive Motions: These motions, which include discovery motions, will be ruled on by the assigned judge without oral argument, unless otherwise ordered. All such motions must be noted for a date by which the ruling is requested; this date must likewise conform to the applicable notice requirements. Rather than noting a time of day, the** Note for Motion **should state "Without Oral Argument." King County Local Rule 7 governs these motions, which include discovery motions. The local rules can be found at www.metrokc.gov/kcscc.**

Motions in Family Law Cases not involving children: Discovery motions to compel, motions in limine, motions relating to trial dates and motions to vacate judgments/dismissals shall be brought before the assigned judge. All other motions should be noted and heard on the Family Law Motions Calendar. King County Local Rule 7 and King County Family Law Local Rules govern these procedures. The local rules can be found at www.metrokc.gov/kcscc.

Emergency Motions: Emergency motions will be allowed only upon entry of an Order Shortening Time. However, emergency discovery disputes may be addressed by telephone call, and without written motion, if the judge approves.

Filing of Documents All original documents must be filed with the Clerk's Office. The working copies of all documents in support or opposition must be marked on the upper right corner of the first page with the date of consideration or hearing and the name of the assigned judge. The assigned judge's working copy must be delivered to his/her courtroom or to the judges' mailroom. Do not file working copies with the Motions Coordinator, except those motions to be heard on the Family Law Motions Calendar, in which case the working copies should be filed with the Family Law Motions Coordinator.

Original Proposed Order: Each of the parties must include in the working copy materials submitted on any motion an original proposed order sustaining his/her side of the argument. Should any party desire a copy of the order as signed and filed by the judge, a preaddressed, stamped envelope shall accompany the proposed order.

Presentation of Orders: All orders, agreed or otherwise, must be presented to the assigned judge. If that judge is absent, contact the assigned court for further instructions. If another judge enters an order on the case, counsel is responsible for providing the assigned judge with a copy.

Proposed orders finalizing settlement and/or dismissal by agreement of all parties shall be presented to the assigned judge or in the Ex Parte Department. Formal proof in Family Law cases must be scheduled before the assigned judge by contacting the bailiff, or formal proof may be entered in the Ex Parte Department. If final orders and/or formal proof are entered in the Ex Parte Department, counsel is responsible for providing the assigned judge with a copy.

C. Form: Memoranda/briefs for matters heard by the assigned judge may not exceed twenty four (24) pages for dispositive motions and twelve (12) pages for nondispositive motions, unless the assigned judge permits over-length memoranda/briefs in advance of filing. Over-length memoranda/briefs and motions supported by such memoranda/briefs may be stricken.

IT IS SO ORDERED. FAILURE TO COMPLY WITH THE PROVISIONS OF THIS ORDER MAY RESULT IN DISMISSAL OR OTHER SANCTIONS. PLAINTIFF/PETITIONER SHALL FORWARD A COPY OF THIS ORDER AS SOON AS PRACTICABLE TO ANY PARTY WHO HAS NOT RECEIVED THIS ORDER.

**PRESIDING JUDGE**

```
        FILED

    07 MAY -1  PM 3:39

      KING COUNTY
SUPERIOR COURT CLERK
      SEATTLE, WA
```

MICHAEL C. HAYDEN

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| BALATON CONDOMINIUM ASSOCIATION, a Washington nonprofit corporation, | NO. |
| Plaintiff, | **07 - 2 - 14 0 6 1 - 1 SEA** |
| v. | SUMMONS |
| BALATON CONDOMINIUM, LLC, a Delaware limited liability company; EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORP., a Delaware corporation; ERP OPERATING LIMITED PARTNERSHIP, an Illinois limited partnership; EQUITY RESIDENTIAL, a Maryland real estate investment trust; DAVID ATTLESON, individually, and JANE DOE ATTLESON, individually, and the marital community composed thereof; SUSAN WIEMER, individually, and JOHN DOE WIEMER, individually, and the marital community composed thereof; AMY HIMMERICH, individually, and JOHN DOE HIMMERICH, individually, and the marital community composed thereof; TAMMY SCULLY, individually, and JOHN DOE SCULLY, individually, and the marital community composed thereof; MARK GOLDSTEIN, individually, and JANE DOE GOLDSTEIN, individually, and the marital community composed thereof; MICHAEL MCHUGH, individually, and JANE DOE MCHUGH, individually, and the marital community | |

X:\CLIENT\04125\7546\Pleadings\PLD Summons.doc
SUMMONS - 1

**STANISLAW ASHBAUGH, LLP**
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

17

1  composed thereof; NATALIA PICOULAS,
   individually, and JOHN DOE PICOULAS,
2  individually, and the marital community
   composed thereof; JOHN DRYK, individually,
3  and JANE DOE DRYK, individually, and the
   marital community composed thereof; MARK
4  PARRELL, individually, and JANE DOE
   PARRELL, individually, and the marital
5  community composed thereof; ROBERT
   TANAKA, individually, and JANE DOE
6  TANAKA, individually, and the marital
   community composed thereof; BARBARA
7  SHUMAN, individually, and JOHN DOE
   SHUMAN, individually, and the marital
8  community composed thereof; and DOES 1-50,

9                    Defendants.

10  TO:    ALL NAMED DEFENDANTS ABOVE

11         A lawsuit has been started against you in the above-entitled Court by Plaintiff Balaton

12  Condominium Association.  Plaintiff's claim is stated in the written Complaint, a copy of

13  which is served upon you with this Summons.

14         In order to defend against this lawsuit, you must respond to the Complaint by stating

15  your defense in writing, and serve a copy upon the undersigned attorney for the Plaintiff

16  within 20 days after the service of this Summons if served upon you within the state of

17  Washington, or 60 days if served upon you outside the state of Washington, including the

18  day of service, or a default judgment may be entered against you without notice.  A default

19  judgment is one where Plaintiff is entitled to what it asks for because you have not

20  responded.  If you serve a notice of appearance on the undersigned attorney, you are entitled

21  to notice before a default judgment may be entered.

22         You may demand that the Plaintiff file this lawsuit with the Court.  If you do so, the

23  demand must be in writing and must be served upon the undersigned attorney for the Plaintiff

24  X:\CLIENT\04125\7546\Pleadings\PLD Summons.doc
    SUMMONS - 2

                              STANISLAW ASHBAUGH, LLP
                                      LAWYERS
                            701 Fifth Avenue, Suite 4400
                               Seattle WA 98104-7012
                           (206) 386-5900 Fax (206) 344-7400

1   at the address below stated.  Within 14 days after you serve the demand, the Plaintiff must

2   file this lawsuit with the Court, or the service on you of this Summons and Complaint will be

3   void.

4        If you wish to seek the advice of an attorney in this matter, you should do so promptly

5   so that your written response, if any, may be served on time.

6        This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the

7   state of Washington.

8

9        DATED this ⅃ day of May, 2007.

10       STANISLAW ASHBAUGH, LLP

11

12       By _____

13       John C. Siegel, WSBA# 29866
         Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24   X:\CLIENT\04125\7546\Pleadings\PLD Summons.doc
     SUMMONS - 3

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

FILED

07 MAY -1 PM 3:39

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

MICHAEL C. HAYDEN

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| BALATON CONDOMINIUM ASSOCIATION, a Washington nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>BALATON CONDOMINIUM, LLC; a Delaware limited liability company; EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORP., a Delaware corporation; ERP OPERATING LIMITED PARTNERSHIP, an Illinois limited partnership; EQUITY RESIDENTIAL, a Maryland real estate investment trust; DAVID ATTLESON, individually, and JANE DOE ATTLESON, individually, and the marital community composed thereof; SUSAN WIEMER, individually, and JOHN DOE WIEMER, individually, and the marital community composed thereof; AMY HIMMERICH, individually, and JOHN DOE HIMMERICH, individually, and the marital community composed thereof; TAMMY SCULLY, individually, and JOHN DOE SCULLY, individually, and the marital community composed thereof; MARK GOLDSTEIN, individually, and JANE DOE GOLDSTEIN, individually, and the marital community composed thereof; MICHAEL MCHUGH, individually, and JANE DOE MCHUGH, individually, and the marital community | NO. **07-2-14061-1 SEA**<br><br>PLAINTIFF'S COMPLAINT FOR:<br><br>(1) BREACH OF EXPRESS AND IMPLIED WARRANTY UNDER THE WASHINGTON CONDOMINIUM ACT;<br>(2) BREACH OF PURCHASE AND SALE AGREEMENT CONTRACTS;<br>(3) BREACH OF PROPERTY/REAL ESTATE MANAGEMENT CONTRACT;<br>(4) NEGLIGENT PROPERTY/REAL ESTATE MANAGEMENT;<br>(5) BREACH OF FIDUCIARY DUTY;<br>(6) LIABILITY UNDER RCW 64.34.344 AND THE DECLARATION;<br>(7) VIOLATION OF THE CONSUMER PROTECTION ACT;<br>(8) FRAUDULENT CONCEALMENT;<br>(9) LIABILITY UNDER RCW 64.34.405, 64.34.410 AND 64.34.415;<br>(10) VIOLATION OF RCW |

COMPLAINT - 1

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

composed thereof; NATALIA PICOULAS, individually, and JOHN DOE PICOULAS, individually, and the marital community composed thereof; JOHN DRYK, individually, and JANE DOE DRYK, individually, and the marital community composed thereof; MARK PARRELL, individually, and JANE DOE PARRELL, individually, and the marital community composed thereof; ROBERT TANAKA, individually, and JANE DOE TANAKA, individually, and the marital community composed thereof; BARBARA SHUMAN, individually, and JOHN DOE SHUMAN, individually, and the marital community composed thereof; and DOES 1-50,

Defendants.

19.40.041 AND 19.40.051;
(11)  RELIEF FOR MUTUAL MISTAKE; AND
(12)  ALTER EGO/CORPORATE DISREGARD LIABILITY

Plaintiff Balaton Condominium Association (the "Association") hereby asserts the following:

## I. PARTIES

1.      Pursuant to a Condominium Declaration for Balaton Condominium Homes (the "Declaration") and its Articles of Incorporation, the Association, a Washington nonprofit corporation, was established under the Washington Condominium Act, RCW 64.34 *et seq.*, as the unit owners association for the Balaton Condominium Homes conversion project (the "Condominium" or "Project"). Pursuant to RCW 64.34.304, 64.34.328 and/or the Declaration, the Association has the duty to maintain, repair and replace all of the Common Elements and Limited Common Elements and other unit owner/Association member property located in and on the Project, and has the duty to repair, replace and restore damage to the Project.

2.      Pursuant to RCW 64.34.304(1)(d), the Association has the right to institute litigation, "in its own name on behalf of itself or two or more unit owners on matters

COMPLAINT - 2

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1  affecting the condominium." The Association is instituting this action pursuant to that statute,

2  on behalf of itself and also on behalf of all of the Balaton unit owners on matters affecting

3  the Association and the Condominium.

4     3.     BALATON CONDOMINIUM, LLC ("Balaton") purports to be a Delaware

5  limited liability company licensed in, conducting business in, and residing in Washington

6  State. Balaton is identified in the Declaration as the "Declarant" of the Project. The

7  Association is informed and believes, and on that basis alleges, that Balaton purported to

8  have an ownership interest in the Project, sold Project units, and purported to have and/or

9  have had an ownership interest in the proceeds from Project unit sales. Balaton acted in

10  concert with and was controlled by the other "Defendants Equity" (as defined in paragraph

11  21 below) in converting the Project from an apartment to a condominium, in the marketing

12  and selling of units therein, and in operating and controlling the Association during the

13  period of declarant control.

14     4.     EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORP.

15  ("Equity") is a Delaware corporation licensed in, conducting business in, and residing in

16  Washington State. Equity is and/or was at all relevant times a managing member and the

17  authorized agent of Balaton, and is and/or was at all relevant times wholly owned by ERP.

18  The Association is informed and believes, and on that basis alleges, that Equity had an

19  ownership interest in the Project and/or had/has an ownership interest in the proceeds from

20  unit sales.  The Association is further informed and believes, and on that basis alleges that

21  Equity acted in concert with and controlled the actions of Balaton and other related entities in

22  converting the Project from an apartment to a condominium, in the marketing and selling of

23  units therein, and in operating and controlling the Association during the period of declarant

24  COMPLAINT - 3

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1 | control.

2 |      5.     ERP OPERATING LIMITED PARTNERSHIP ("ERP") is an Illinois limited

3 | partnership licensed in, conducting business in, and residing in Washington State. The

4 | Association is informed and believes, and on that basis alleges, that ERP had an ownership

5 | interest in the Project and/or had/has an ownership interest in the proceeds from unit sales.

6 | The Association is further informed and believes, and on that basis alleges that ERP acted in

7 | concert with and controlled the actions of Balaton and other related entities in converting the

8 | Project from an apartment to a condominium, in the marketing and selling of units therein,

9 | and in operating and controlling the Association during the period of declarant control.

10 |      6.     EQUITY RESIDENTIAL is a Maryland real estate investment trust

11 | conducting business in and residing in Washington State. Equity Residential is and/or was at

12 | all relevant times the general partner of ERP and the authorized agent of the other

13 | Defendants Equity. The Association is informed and believes, and on that basis alleges, that

14 | Equity Residential had an ownership interest in the Project and/or had/has an ownership

15 | interest in the proceeds from unit sales.  The Association is further informed and believes,

16 | and on that basis alleges that Equity Residential acted in concert with and controlled the

17 | actions of Balaton and other related entities in converting the Project from an apartment to a

18 | condominium, in the marketing and selling of units therein, and in operating and controlling

19 | the Association during the period of declarant control. According to its own website, Equity

20 | Residential, and its "affiliates, subsidiaries and related entities," "operates businesses and

21 | Web sites under the names, among others, **Equity Residential** (equityresidential.com), **ERP**

22 | **Operating Limited Partnership, Equity Residential Properties Management Corp.**

23 | (equityapartments.com) and Equity Corporate Housing, Inc. (equitycorporatehousing.com)

24 | COMPLAINT - 4

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1  Equity Condominiums (equitycondos.com), and Fort Lewis Communities

2  (ftlewiscommunities.com),"… and is the **"parent company"** of those entities.

3      7.    DAVID ATTLESON ("Attleson") is an individual residing in Washington

4  State. Attleson is and/or was at all relevant times a member and/or manager and an

5  authorized agent of Balaton and was a director and officer of the Association's Board of

6  Directors. The Association is informed and believes, and on that basis alleges, that Attleson

7  is and/or was at all relevant times an owner, shareholder, director, officer, partner, trustee,

8  principal, agent, and/or employee of Equity, ERP and/or Equity Residential. The Association

9  is further informed and believes, and on that basis alleges, that Attleson has and/or had at all

10  relevant times an ownership interest in the proceeds from Project unit sales and served as the

11  primary/lead "Defendants Equity" principal "Construction Manager" and/or "Conversion

12  Manager" and/or "Project Manger" and/or "Property Manager" for the Project. JANE DOE

13  ATTLESON is an individual believed to be the spouse of Attleson. The Association is

14  informed and believes, and on that basis alleges, that the acts and failures to act of Attleson

15  in connection with the Project and as specifically alleged herein were committed in

16  furtherance of and/or with the intent to benefit his marital community, its property, or its

17  business.

18      8.    SUSAN WIEMER ("Wiemer") is an individual believed to be residing in

19  Illinois. Wiemer is and/or was at all relevant times a member and/or manager of Balaton and

20  was a director and officer of the Association's Board of Directors. The Association is

21  informed and believes, and on that basis alleges, that Wiemer is and/or was at all relevant

22  times an owner, shareholder, director, officer, partner, trustee, principal, agent, and/or

23  employee of Equity, ERP and/or Equity Residential. The Association is further informed and

24  COMPLAINT - 5

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   believes, and on that basis alleges, that Wiemer has and/or had at all relevant times an

2   ownership interest in the proceeds from Project unit sales. JOHN DOE WIEMER is an

3   individual believed to be the spouse of Wiemer. The Association is informed and believes,

4   and on that basis alleges, that the acts and failures to act of Wiemer in connection with the

5   Project and as specifically alleged herein were committed in furtherance of and/or with the

6   intent to benefit her marital community, its property, or its business.

7          9.     AMY HIMMERICH ("Himmerich") is an individual believed to be residing

8   in Washington State. Himmerich was a director and officer of the Association's Board of

9   Directors. The Association is informed and believes, and on that basis alleges, that

10  Himmerich is and/or was at all relevant times a member and/or manager of Balaton and/or

11  was an owner, shareholder, director, officer, partner, trustee, principal, agent, and/or

12  employee of Equity, ERP and/or Equity Residential.  The Association is informed and

13  believes, and on that basis alleges, that Himmerich has and/or had at all relevant times an

14  ownership interest in the proceeds from Project unit sales. JOHN DOE HIMMERICH is an

15  individual believed to be the spouse of Himmerich. The Association is informed and

16  believes, and on that basis alleges, that the acts and failures to act of Himmerich in

17  connection with the Project and as specifically alleged herein were committed in furtherance

18  of and/or with the intent to benefit her marital community, its property, or its business.

19         10.    TAMMY SCULLY ("Scully") is an individual believed to be residing in

20  Illinois. Scully is and/or was at all relevant times a member and/or manager of Balaton. The

21  Association is informed and believes, and on that basis alleges, that Scully is and/or was at

22  all relevant times an owner, shareholder, director, officer, partner, trustee, principal, agent,

23  and/or employee of Equity, ERP and/or Equity Residential. The Association is further

24  COMPLAINT - 6                              STANISLAW ASHBAUGH, LLP
                                                      LAWYERS
                                               701 Fifth Avenue, Suite 4400
                                                 Seattle WA 98104-7012
                                            (206) 386-5900 Fax (206) 344-7400

1   informed and believes, and on that basis alleges, that Scully has and/or had at all relevant

2   times an ownership interest in the proceeds from Project unit sales. JOHN DOE SCULLY is

3   an individual believed to be the spouse of Scully. The Association is informed and believes,

4   and on that basis alleges, that the acts and failures to act of Scully in connection with the

5   Project and as specifically alleged herein were committed in furtherance of and/or with the

6   intent to benefit her marital community, its property, or its business.

7          11.   MARK GOLDSTEIN ("Goldstein") is an individual believed to be residing in

8   Illinois. Goldstein is and/or was at all relevant times a member and/or manager and an

9   authorized agent of Balaton. The Association is informed and believes, and on that basis

10  alleges, that Goldstein is and/or was at all relevant times an owner, shareholder, director,

11  officer, partner, trustee principal, agent, and/or employee of Equity, ERP and/or Equity

12  Residential. The Association is further informed and believes, and on that basis alleges, that

13  Goldstein has and/or has at all relevant times an ownership interest in the proceeds from

14  Project unit sales. JANE DOE GOLDSTEIN is an individual believed to be the spouse of

15  Goldstein. The Association is informed and believes, and on that basis alleges, that the acts

16  and failures to act of Goldstein in connection with the Project and as specifically alleged

17  herein were committed in furtherance of and/or with the intent to benefit his marital

18  community, its property, or its business.

19         12.   MICHAEL MCHUGH ("McHugh") is an individual believed to be residing in

20  Illinois. McHugh is and/or was at all relevant times a member and/or manager of Balaton.

21  The Association is informed and believes, and on that basis alleges, that McHugh is and/or

22  was at all relevant times an owner, shareholder, director, officer, partner, trustee, principal,

23  agent, and/or employee of Equity, ERP and/or Equity Residential. The Association is further

24  COMPLAINT - 7

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1    informed and believes, and on that basis alleges, that McHugh has and/or had at all relevant

2    times an ownership interest in the proceeds from Project unit sales. JANE DOE MCHUGH is

3    an individual believed to be the spouse of McHugh. The Association is informed and

4    believes, and on that basis alleges, that the acts and failures to act of McHugh in connection

5    with the Project and as specifically alleged herein were committed in furtherance of and/or

6    with the intent to benefit his marital community, its property, or its business.

7        13.    NATALIA PICOULAS ("Picoulas") is an individual believed to be residing

8    in Illinois. Picoulas is and/or was at all relevant times a member and/or manager of Balaton.

9    The Association is informed and believes, and on that basis alleges, that Picoulas is and/or

10   was at all relevant times an owner, shareholder, director, officer, partner, trustee, principal,

11   agent, and/or employee of Equity, ERP and/or Equity Residential. The Association is further

12   informed and believes, and on that basis alleges, that Picoulas has and/or had at all relevant

13   times an ownership interest in the proceeds from Project unit sales. JOHN DOE PICOULAS

14   is an individual believed to be the spouse of Picoulas. The Association is informed and

15   believes, and on that basis alleges, that the acts and failures to act of Picoulas in connection

16   with the Project and as specifically alleged herein were committed in furtherance of and/or

17   with the intent to benefit her marital community, its property, or its business.

18       14.    JOHN DRYK ("Dryk") is an individual believed to be residing in Illinois.

19   Dryk is and/or was at all relevant times a member and/or manager of Balaton. The

20   Association is informed and believes, and on that basis alleges, that Dryk is and/or was at all

21   relevant times an owner, shareholder, director, officer, partner, trustee, principal, agent,

22   and/or employee of Equity, ERP and/or Equity Residential. The Association is further

23   informed and believes, and on that basis alleges, that Dryk has and/or had at all relevant

24   COMPLAINT - 8

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   times an ownership interest in the proceeds from Project unit sales. JANE DOE DRYK is an

2   individual believed to be the spouse of Dryk. The Association is informed and believes, and

3   on that basis alleges, that the acts and failures to act of Dryk in connection with the Project

4   and as specifically alleged herein were committed in furtherance of and/or with the intent to

5   benefit his marital community, its property, or its business.

6       15.    MARK PARRELL ("Parrell") is an individual believed to be residing in

7   Illinois. Parrell is and/or was at all relevant times a member and/or manager of Balaton. The

8   Association is informed and believes, and on that basis alleges, that Parrell is and/or was at

9   all relevant times an owner, shareholder, director, officer, partner, trustee, principal, agent,

10   and/or employee of Equity, ERP and/or Equity Residential. The Association is further

11   informed and believes, and on that basis alleges, that Parrell has and/or had at all relevant

12   times an ownership interest in the proceeds from Project unit sales. JANE DOE PARRELL is

13   an individual believed to be the spouse of Parrell. The Association is informed and believes,

14   and on that basis alleges, that the acts and failures to act of Parrell in connection with the

15   Project and as specifically alleged herein were committed in furtherance of and/or with the

16   intent to benefit his marital community, its property, or its business.

17       16.    ROBERT TANAKA ("Tanaka") is an individual believed to be residing in

18   Illinois. Tanaka is and/or was at all relevant times a member and/or manager of Balaton. The

19   Association is informed and believes, and on that basis alleges, that Tanaka is and/or was at

20   all relevant times an owner, shareholder, director, officer, partner, trustee, principal, agent,

21   and/or employee of Equity, ERP and/or Equity Residential. The Association is further

22   informed and believes, and on that basis alleges, that Tanaka has and/or had at all relevant

23   times an ownership interest in the proceeds from Project unit sales. JANE DOE TANAKA is

24   COMPLAINT - 9

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1  an individual believed to be the spouse of Tanaka. The Association is informed and believes,

2  and on that basis alleges, that the acts and failures to act of Tanaka in connection with the

3  Project and as specifically alleged herein were committed in furtherance of and/or with the

4  intent to benefit his marital community, its property, or its business.

5      17.    BARBARA SHUMAN ("Shuman") is an individual believed to be residing in

6  Illinois. Shuman is and/or was at all relevant times a member and/or manager of Balaton. The

7  Association is informed and believes, and on that basis alleges, that Shuman is and/or was at

8  all relevant times an owner, shareholder, director, officer, partner, trustee, principal, agent,

9  and/or employee of Equity, ERP and/or Equity Residential. The Association is further

10  informed and believes, and on that basis alleges, that Shuman has and/or had at all relevant

11  times an ownership interest in the proceeds from Project unit sales. JOHN DOE SHUMAN is

12  an individual believed to be the spouse of Shuman. The Association is informed and believes,

13  and on that basis alleges, that the acts and failures to act of Shuman in connection with the

14  Project and as specifically alleged herein were committed in furtherance of and/or with the

15  intent to benefit her marital community, its property, or its business.

16      18.    DOES 1-50 are believed to be business entities related to and/or affiliates of

17  Balaton, Equity, ERP and/or Equity Residential and/or owners, shareholders, members,

18  managers, directors, officers, partners, trustees, principals, agents, and/or employees of the

19  same, that had an ownership interest in the Project and/or were involved in converting

20  Balaton from an apartment to a condominium, and/or in the marketing and selling of Project

21  units, and/or in controlling the Association and managing and maintaining the Project, and/or

22  were otherwise involved in the Project before, during and/or after conversion and/or had an

23  ownership interest in the proceeds from Project unit sales.

24  COMPLAINT - 10

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1      19.    The Association is informed and believes, and on that basis alleges, that at all

2   relevant times, Balaton, Equity, ERP and Equity Residential were "affiliates" of one another

3   as defined in RCW 64.34.020(1), and that they acted in concert in executing the Declaration

4   and that they reserved, succeeded to, possessed and/or exercised "special declarant rights" as

5   defined in RCW 64.34.020(29) and/or the Declaration, and/or owned a fee interest in the real

6   property that was subjected to the Declaration at the time of the recording of an instrument

7   pursuant to RCW 64.34.316, and were directly, or through on or more affiliates, materially

8   involved in the construction, marketing, or sale of units in the Condominium created by the

9   recording of the instrument, making them "declarants" of the Project under RCW

10  64.34.020(13); *One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Inv., Inc.,* 148

11  Wn.2d 319, 61 P.2d 1094, (2002); and/or the definition of declarant in the Declaration. The

12  Association is further informed and believes, and on that basis alleges, that Balaton, Equity,

13  ERP and Equity Residential were also "dealers" as defined in RCW 64.34.020(12).

14     20.    Defendant Balaton has been purported to be the named "Declarant" of the

15  Project and the seller of Project units. The claims being made herein against the remaining

16  Defendants Equity, including Equity, ERP and Equity Residential, and the to-be-named Doe

17  Defendants to the extent appropriate, for declarant and seller liability are being made against

18  them only to the extent they are determined to be "co-declarants" of the Project and/or "alter

19  egos" of Defendant Balaton under applicable law. Additionally, the claims for "declarant -

20  construction professional liability" made herein are only being made against Defendants

21  Balaton, Equity, ERP and Equity Residential and are not presently being made against any of

22  the other Defendants. However, to the extent other named and/or Doe Defendant entities or

23

24  COMPLAINT - 11

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1  individuals are established as being co-declarants and/or alter egos of a declarant Defendant

2  entity, the claims made herein for declarant liability apply equally to them.

3      21.    Balaton, Equity, ERP and Equity Residential are referred to collectively

4  herein as "Defendants Equity". The claims and allegations made herein against Defendants

5  Equity and their owners, shareholders, members, managers, directors, officers, partners,

6  trustees, principals, agents, and/or employees are also being made against Does 1-50, to the

7  extent they apply.

8      22.    Attleson, Wiemer, Scully, Goldstein, McHugh, Picoulas, Dryk, Parrell,

9  Tanaka and Shuman are referred to collectively herein as the "Balaton Individuals".

10     23.    The Association served Defendants Equity, by and through their authorized

11  agents, with its pre-litigation RCW 64.50.020 Notice of Claim letter on or before July 27,

12  2005. On or about August 18, 2005 the Association, by and through its counsel, received a

13  response from Defendants Equity's authorized agent Defendant Goldstein proposing on

14  Defendants Equity's behalf to inspect the Project, to complete the proposed inspection by

15  October 15, 2005, and based on that proposed inspection, to either offer to remedy the

16  defects, compromise by payment, or dispute the claim.  On or about August 25, 2005, the

17  Association served Defendants Equity, by and through their authorized agents, with a pre-

18  litigation RCW 64.50.020(8) Amended Notice of Claim letter, to which a RCW 64.50.020

19  response was never received by the Association.

20                            **II. JURISDICTION AND VENUE**

21     24.    The Association incorporates herein by reference Paragraphs 1-23 of this

22  Complaint.

23     25.    This Court has jurisdiction over this matter because the defective work, unit

24  COMPLAINT - 12

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1  marketing and sales, business, real estate/property management, declarant control, property

2  damage, and/or other tortious and/or non-tortious acts and/or failures to act of and/or caused

3  by the Defendants and giving rise to their liability in this matter occurred, and the relevant

4  contracts were entered into and performed in Washington State. Additionally, one or more of

5  the Defendants have their principal place of business in, reside in, and/or are domiciled in

6  Washington State.

7       26.    Venue is proper because the Project is located in Lake Forest Park, King

8  County, and the defective work, unit marketing and sales, business, real estate/property

9  management, declarant control, property damage, and/or other tortious and/or non-tortious

10  acts and/or failures to act of and/or caused by the Defendants and giving rise to their liability

11  in this matter occurred, and the relevant contracts were entered into and performed in King

12  County. Additionally, one or more of the Defendants do business in, reside in, and/or are

13  domiciled in King County.

14  **III. CLAIMS**

15  **A. First Claim – Against Defendants Equity for Breach of Express and Implied Warranty under the Washington Condominium Act**

16

17       27.    The Association incorporates herein by reference Paragraphs 1-26 of this

Complaint.

18

19       28.    The express and implied warranties described below in Paragraphs 29 through

20  31 "run with the land," extend to original and subsequent unit purchasers, and were made for

both their benefit and for the benefit of the Association.

21

22       29.    Pursuant to RCW 64.34.443 of the Washington Condominium Act ("WCA"),

23  "[a]*ny written affirmation of fact or promise* which relates to the unit, its use, or rights

appurtenant thereto, area improvements to the condominium that would directly benefit the

24  COMPLAINT - 13

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   unit, or the right to use or have the benefit of facilities not located in the condominium

2   creates an express warranty that the unit and related rights and uses will conform to the

3   affirmation or promise; [a]ny model or written description of the physical characteristics of

4   the condominium at the time the purchase agreement is executed, ***including plans and***

5   ***specifications of or for improvements***, creates an express warranty that the condominium

6   will conform to the model or description; and [a]ny written description of the quantity or

7   extent of the real property comprising the condominium, including plats or surveys, creates

8   an express warranty that the condominium will conform to the description..."

9      30.    In many respects, the "as-built" construction of the Project, including but not

10  limited to the construction of the weather-proofing and structural systems, both original and

11  the construction that was done as part of the conversion process, does not conform to the

12  approved plans and specifications for the Project and is in violation of the applicable building

13  codes. Additionally, the Project's Public Offering Statement ("POS") contains numerous

14  other written affirmations of fact and/or promises made by or on behalf of Defendants Equity

15  regarding the quality of the construction and the condition of the Project which were false,

16  including but not limited to: a) that there were no known physical hazards at the Project; b)

17  that all structural components and mechanical systems of all buildings are substantially

18  completed; c) that the buildings are as originally designed; d) that the Project is in good

19  condition and well maintained; and e) that the workmanship is good and the materials used

20  were appropriate. Further, Defendants Equity included in the POS the first (and warranted)

21  budget for the Association, which they created and which grossly understated the amount of

22  money necessary to repair and maintain the Project and operate the Association. Because the

23  aforementioned written representations constitute express warranties under the WCA and

24  COMPLAINT - 14

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   were false when made, Defendants Equity are liable to the Association and its unit owner

2   members for breach of express warranty under the WCA.

3       31.    Pursuant to RCW 64.34.445 of the WCA, Defendants Equity impliedly

4   warranted that the units, limited common elements and common elements of the Project were

5   suitable for the ordinary uses of real estate of its type, and that any improvements made or

6   contracted for by them were free from defective materials and were constructed in

7   accordance with sound engineering and construction standards, in a workmanlike manner,

8   and in compliance with all laws applicable to such improvements.

9       32.    Defendants Equity breached their implied warranties to the Association and its

10  unit owner members in that there are serious and systemic violations of applicable building

11  codes and other serious systemic defects in the materials, design, installation and/or

12  construction of the Project's building envelope and underlying weather resistive

13  barrier/weather-proofing systems, roofs, decks, below-grade waterproofing system, vent

14  system, structural system, site grading and drainage, electrical, fire and life safety systems

15  and other defects that have caused and continue to cause substantial water and moisture

16  intrusion and resultant property damage, including mold growth, to exterior and interior

17  building components. Additionally, some of the defects at issue have created conditions that

18  constitute fire/life safety/health hazards and structural instability hazards. The

19  aforementioned defects, resultant water and moisture intrusion, mold growth and other

20  property damage to building components and the other resultant hazardous conditions that

21  exist at the Project have rendered it unsuitable for the ordinary use of real estate of its type.

22      33.    As a direct and proximate result of the breaches of express and implied

23  warranties and consequential property damage described above, the Association and its unit

24  COMPLAINT - 15

1    owner members have been damaged in an amount to be proved at trial. Such damages

2    include, among other things, the cost of repairing the defects and damage, including the

3    necessary investigative costs and repair scope and cost of repair estimate development costs,

4    and the loss of use suffered by unit owners as a result of the defects and damage and their

5    repair, relocation expenses and diminution in market value of the units and Project as whole.

6    Additionally, pursuant to RCW 64.34.455, the Association is entitled to its reasonable

7    attorneys' fees incurred in investigating and prosecuting this action.

8    ### B. Second Claim – Against Defendants Equity for Breach of Purchase and Sale Agreement Contracts

9

10        34.    The Association incorporates herein by reference Paragraphs 1-33 of this

    Complaint.

11

12        35.    Defendants Equity sold the units, limited common elements and common

    elements of the Project through purchase and sale agreement contracts with unit purchasers.

13
    The purchase and sale agreement contracts used by Defendants Equity for unit sales were

14
    unconscionable within the meaning of RCW 64.34.080 at the time they were entered into.

15
    Notwithstanding their unconscionability, a fundamental term of the purchase and sale

16
    agreements was that the entire Project was constructed in accordance with its approved plans

17
    and specifications, applicable building codes and industry standards, that it was otherwise

18
    free from defects and physical hazards, and that it was habitable.

19

20        36.    Defendants Equity owed the aforementioned contractual obligations, and the

    duty of good faith in the performance and enforcement of the contracts pursuant to RCW

21
    64.34.090, to each and every Project unit purchaser. Defendants Equity breached those duties

22
    by selling Project units, limited common elements and common elements that were

23
    defectively constructed in deviation from the Project's approved plans and specifications and

24
    COMPLAINT - 16

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   in violation of the applicable building codes and industry standards, were otherwise

2   defective, constitute physical hazards, and are not habitable.

3        37.    As a direct and proximate result of the breaches of contract described above,

4   unit owners and the Association have been damaged in an amount to be proved at trial. Such

5   damages include, among other things, the cost of repairing the defects and damage, including

6   the necessary investigative costs and repair scope and cost of repair estimate development

7   costs, and the loss of use suffered by unit owners as a result of the defects and damage and

8   their repair, relocation expenses, consequential damages, diminution in market value of the

9   units and Project as whole, and all other damages that flow naturally from the breaches.

10   Additionally, pursuant to paragraph q of the purchase and sale agreements used for unit sales,

11   the Association is entitled to its reasonable attorneys' fees and expenses incurred in

12   investigating and prosecuting this action.

13          **C.  Third Claim – Against Defendants Equity for Breach of Property/Real Estate Management Contract**

14

15        38.    The Association incorporates herein by reference Paragraphs 1-37 of this

Complaint.

16

17        39.    For a period of time after the Condominium was created and the Association

18   was formed, Defendants Equity, pursuant to a written contract and/or an oral contract and/or

19   a contract established by conduct, were responsible for the management, control, supervision

20   and maintenance of the Project.  Defendants Equity owed the aforementioned contractual

21   duty to the Association and each and every Association member. Defendants Equity

22   breached that contractual duty by, including but not limited to, failing to disclose and/or

23   making misrepresentations to the Association and its unit owner members regarding: a) the

24   conflicts of interest Defendants Equity had in being both the declarants/sellers of the Project

COMPLAINT - 17

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   and the Project's property manager; b) the existence of serious and wide spread building code

2   violations and other defective construction, resultant property damage and physical hazards

3   at the Project; c) the financial interest Defendants Equity had in not making the necessary

4   defect and damage repairs at the Project and in concealing the defects and damage from the

5   Association and unit owners in an effort to save money and avoid warranty claims; d) the

6   inadequacy of the Association budget created by Defendants Equity and included in the

7   Project's Public Offering Statement; e) that Defendants Equity were distributing assets from

8   named declarant Balaton Condominium, LLC and possibly other Equity Defendants to others

9   without leaving any assets in reserve to satisfy warranty claims made by the Association or

10  unit owners, to their detriment; f) the legal rights of the Association and its members

11  regarding defective construction and the control, management, maintenance and repair

12  responsibilities of the Declarants and the Association; and g) by failing to properly inspect,

13  maintain and repair the Project. Because of the aforementioned breaches of contractual duty,

14  property damage has occurred at the Project, is currently occurring, and will continue to

15  occur.

16      40.    As a direct and proximate result of the breaches of contract/duty and

17  consequential property damage described above, the Association and its unit owner members

18  have been damaged in an amount to be proved at trial. Such damages include, among other

19  things, the cost of repairing the defects and damage, including the necessary investigative

20  costs and repair scope and cost of repair estimate development costs, and the loss of use

21  suffered by unit owners as a result of the defects and damage and their repair, relocation

22  expenses, diminution in market value of the units and Project as whole, consequential

23  damages, and all other damages that flow naturally from the breaches.

24  COMPLAINT - 18

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

  
## D. Fourth Claim – Against Defendants Equity for
## Negligent Property/Real Estate Management

41.     The Association incorporates herein by reference Paragraphs 1-40 of this Complaint.

42.     For a period of time after the Condominium was created and the Association was formed, Defendants Equity assumed and performed property/real estate management duties for the Association and its unit owner members, and in that capacity, was responsible for the management, control, supervision and maintenance of the Project.  Defendants Equity breached those duties by, including but not limited to, failing to disclose and/or making misrepresentations to the Association and its unit owner members regarding: a) the conflicts of interest Defendants Equity had in being both the declarants/sellers of the Project and the Project's property manager; b) the existence of serious and wide spread building code violations and other defective construction, resultant property damage and physical hazards at the Project; c) the financial interest Defendants Equity had in not making the necessary defect and damage repairs at the Project and in concealing the defects and damage from the Association and unit owners in an effort to save money and avoid warranty claims; d) the inadequacy of the Association budget created by Defendants Equity and included in the Project's Public Offering Statement; e) that Defendants Equity were distributing assets from named declarant Balaton Condominium, LLC and possibly other Equity Defendants to others without leaving any assets in reserve to satisfy warranty claims made by the Association or unit owners, to their detriment; f) the legal rights of the Association and its members regarding defective construction and the control, management, maintenance and repair responsibilities of the Declarants and the Association; and g) by failing to properly inspect,

COMPLAINT - 19

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1    maintain and repair the Project. Because of the aforementioned breaches of duty, property

2    damage has occurred at the Project, is currently occurring, and will continue to occur.

3        43.     As a direct and proximate result of the breaches of duty and consequential

4    property damage described above, the Association and its unit owner members have been

5    damaged in an amount to be proved at trial. Such damages include, among other things, the

6    cost of repairing the defects and damage, including the necessary investigative costs and

7    repair scope and cost of repair estimate development costs, and the loss of use suffered by

8    unit owners as a result of the defects and damage and their repair, relocation expenses,

9    diminution in market value of the units and Project as whole, consequential damages, and

10    any and all other foreseeable damages.

11    **E. Fifth Claim – Against Defendants Equity and Defendants Attleson, Wiemer**
                     **and Himmerich for Breach of Fiduciary Duty**

12

13        44.     The Association incorporates herein by reference Paragraphs 1-43 of this
   Complaint.

14

15        45.     Pursuant to the WCA and the Declaration, the Association is responsible for

16    repairing, maintaining and replacing the Common Elements, Limited Common Elements and

17    other unit owner property located in and on the Project, and for repairing, replacing and

18    restoring damage to the Project. The Project is not currently and never has been owned,

19    rented or occupied by the Association, but rather is and has always been owned and occupied

20    by the unit owners. Attached hereto as Exhibit 1 and incorporated into this Complaint by

21    reference is a true and correct copy of Schedule B of the Declaration, which contains a list of

22    the 108 condominium units at the Project and the percentages of Project ownership held by

23    each of the individual owners of the listed units, which total one hundred (100) percent

24    ownership of the Project.

COMPLAINT - 20

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

46.     For a period of time, Defendants Equity and Defendants Attleson, Wiemer and Himmerich controlled the Association's Board of Directors, and therefore, under RCW 64.34.308 and the Declaration, owed a fiduciary duty of care to the Association and its unit owner members and were required to at all times act on behalf of the Association. Defendants Equity and Defendants Attleson, Wiemer and Himmerich breached that fiduciary duty by, including but not limited to: a) failing to disclose to the Association and unit owners the existence of construction defects and resultant property damage at the Project that they knew or should have known about; b) failing to disclose to the Association and unit owners the financial interest Defendants Equity had in not making the necessary defect and damage repairs at the Project and instead in concealing the defects and damage from the Association and unit owners in an effort to save money and avoid warranty claims; c) failing to disclose to the Association and unit owners the conflicts of interest Defendants Equity had in being both the declarants/sellers of the Project and in controlling the Association; d) including provisions in the Declaration that impose limitations on the power of the Association to deal with the declarant(s) which are more restrictive than the limitations imposed on the power of the Association to deal with other persons; e) failing to conduct reasonable inspections of the Project; f) failing to identify and maintain, repair and/or replace construction defects and property damage at the Project that they knew or should have known about; g) failing to provide adequate reserves in the Association's budget for the repair of construction defects and resultant property damage at the Project or otherwise provide funding for the same; h) failing to comply with the provisions of Article 21 of the Declaration by not making the required determinations regarding the construction defect and resultant water intrusion-caused damage to the Project, by not notifying unit owners of the damage, by not making the

COMPLAINT - 21

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   necessary repairs, and by other acts and/or failures to act; i) failing to disclose to the

2   Association and the unit owners that assets were being distributed from Balaton, and perhaps

3   other Equity Defendants, to other entities and/or individuals, and that as a result, Balaton was

4   being rendered insolvent and/or financially unable to properly respond to Association and/or

5   unit owner warranty claims; j) failing to disclose to the Association and the unit owners the

6   inadequacy of the Association budget created by Defendants Equity and included in the

7   Project's Public Offering Statement; k) failing to request warranty work from Defendants

8   Equity for the repair of defects and resultant damage at the Project that they knew or should

9   have known about due their conflict of interest in representing Defendants Equity interests

10  while at the same time controlling the Association's Board, a conflict that they resolved in

11  favor of Defendants Equity and against the Association; and l) otherwise failing to comply

12  with their duties under the WCA and Declaration.

13       47.    Defendants Equity and Attleson, Wiemer and Himmerich and/or Defendants

14  Equity's other agents and/or employees were responsible for and caused the preparation of

15  the Declaration, were fully aware of its terms, including but not limited to, the terms

16  pertaining to their fiduciary duty as Association board members, their duty to at all times act

17  on behalf of the Association, and the Association's maintenance, repair and replacement

18  duties and obligations, and yet in breach of their fiduciary duties they intentionally and/or

19  unintentionally failed to comply with the very terms of the Declaration they were responsible

20  for creating and recording. Defendants Equity, Attleson, Wiemer and Himmerich breached

21  their fiduciary duties by governing, controlling and operating the Association intentionally

22  and/or unintentionally in such a manner that they repeatedly placed their interests over the

23  interests of the Association and its unit owner members (in violation of Section 14.2 of the

24  COMPLAINT - 22

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1    Declaration) in order to avoid their responsibility to make defect and property damage repairs

2    to the Project they knew and/or should have known were necessary or to provide funding to

3    the Association for the repair of the same and instead passed that financial obligation on to

4    the unsuspecting unit owners and the Association. As a result of the actions and/or failures to

5    act described above, property damage to the Project has occurred, is currently occurring, and

6    will continue to occur. Additionally, the Association and unit owners have suffered and will

7    suffer additional damages that do not arise out of the aforementioned property damage to the

8    Project.

9        48.     As a direct and proximate result of the breaches of fiduciary duty and

10   consequential property damage described above, the Association and its unit owner members

11   have been damaged in an amount to be proved at trial. Such damages include, among other

12   things, the cost of repairing the defects and damage, including the necessary investigative

13   costs and repair scope and cost of repair estimate development costs, and the loss of use

14   suffered by unit owners as a result of the defects and damage and their repair, relocation

15   expenses, diminution in market value of the units and Project as whole, consequential

16   damages, and any and all other foreseeable damages. Additionally, pursuant to RCW

17   64.34.455 and/or the Declaration, the Association is entitled to its reasonable attorneys' fees

18   and all other costs/expenses incurred in investigating and prosecuting this action.

19       **F.  Sixth Claim – Against Defendants Equity for Liability under**
         **RCW 64.34.344 and the Declaration**

20
21       49.     The Association incorporates herein by reference Paragraphs 1-48 of this

     Complaint.
22
23       50.     Under RCW 64.34.344 and the Declaration, the Declarants are liable for their

24   torts in connection with any part of the Condominium which they have the responsibility to

COMPLAINT - 23                                    STANISLAW ASHBAUGH, LLP
                                                              LAWYERS
                                                    701 Fifth Avenue, Suite 4400
                                                       Seattle WA 98104-7012
                                                  (206) 386-5900 Fax (206) 344-7400

1   maintain, and are liable for any and all breaches of contract and other wrongful acts

2   committed during their control of the Association and/or ownership of units in the Project.

3   During the period of Declarant control of the Association and ownership of the Project or a

4   portion thereof, Defendants Equity had the duty and responsibility by statute and the

5   Declaration to repair, maintain and replace the Common Elements and Limited Common

6   Elements and other unit owner property located in and on the Project, and to repair, replace

7   and restore damage to the Project. Defendants Equity also had the duty to properly inspect

8   the Project and disclose to the Association and unit owners the existence of construction

9   defects and damage at the Project and to repair the same and/or provide funding for the same,

10  which they negligently and otherwise tortiously failed to do. Further, Defendants Equity

11  served as property/real estate managers of the Project, and in that capacity also owed the

12  aforementioned duties, or some of them, to the Association and the unit owners, which they

13  breached. As a result of the aforementioned, property damage to the Project has occurred, is

14  currently occurring, and will continue to occur.

15      51.    As a direct and proximate result of the tortious and otherwise wrongful acts

16  and/or failures to act and consequential property damage described above, the Association

17  and its unit owner members have been damaged in an amount to be proved at trial. Such

18  damages include, among other things, the cost of repairing the defects and damage, including

19  the necessary investigative costs and repair scope and cost of repair estimate development

20  costs, and the loss of use suffered by unit owners as a result of the defects and damage and

21  their repair, relocation expenses, diminution in market value of the units and the Project as a

22  whole, consequential damages, any and all other foreseeable damages. Additionally, pursuant

23  to RCW 64.34.455 and/or the Declaration, the Association is entitled to its reasonable

24  COMPLAINT - 24

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   attorneys' fees and all other costs/expenses incurred in investigating and prosecuting this

2   action.

3   **G. Seventh Claim – Against Defendants Equity and the Balaton Individuals for
    Violation of the Consumer Protection Act**

4

5       52.    The Association incorporates herein by reference Paragraphs 1-51 of this

    Complaint.

6

7       53.    This Consumer Protection Act ("CPA") claim is being made against the

    Balaton Individuals to the extent they participated in wrongful conduct by the Equity

8

    Defendants, collectively and/or individually, that violated the CPA, or with knowledge

9

    approved of the wrongful conduct. *State v. Ralph Williams' North West Chrysler Plymouth,*

10

    *Inc.*, 87 Wn.2d 298, 553 P.2d 423 (1976).

11

12      54.    RCW 19.86.020 makes it unlawful for any "person" to engage in unfair or

    deceptive acts or practices in trade or commerce. Pursuant to RCW 19.86.010, "person"

13

    includes natural persons, corporations, trusts, unincorporated associations and partnerships.

14

    The CPA applies to prohibited conduct that take places *before, during and after sale*

15

    *activities*, and may be violated by a failure to disclose facts material to a sales transaction, as

16

    well as other unfair or deceptive acts or practices involving marketing and sales. A CPA

17

    violation exists if the following occurs: (1) an unfair or deceptive act or practice, that (2)

18

    occurred in trade or commerce, (3) impacted a public interest, (4) injured the business or

19

    property of another, and (5) was causally related to the injury. A claimant need not show that

20

    the act was intended to deceive, but only that the alleged act had the capacity to deceive a

21

    substantial portion of the public.

22

23      55.    A seller's duty to disclose material facts has been recognized in real estate

    transactions, and a seller's withholding from buyers of facts material to the sale of real estate,

24  COMPLAINT - 25                              **STANISLAW ASHBAUGH, LLP**
                                                LAWYERS
                                                701 Fifth Avenue, Suite 4400
                                                Seattle WA 98104-7012
                                                (206) 386-5900 Fax (206) 344-7400

44

1   including the existence of known construction defects or any other facts adversely affecting

2   the subject property, violates the CPA. *Griffith v. Centex Real Estate Corp.*, 93 Wn. App.

3   202, 211, 969 P.2d 486 (1998). Defendants Equity and the Balaton Individuals owed the

4   aforementioned duty to each and every one of the 108 unit owners at Balaton, to the

5   Association and to the public at large.

6         56.     Defendants Equity advertise nationally on their websites

7   www.equityresidential, www.equitycondos.com and others and through various other

8   advertising media, *including United States mail*, such things as, "[w]e are the largest publicly

9   traded owner, operator and developer of multifamily housing in the United States with nearly

10   160,000 apartments in 26 states and the District of Columbia." They also advertise as

11   "Advantages to Equity Residential Condominiums: *Quality construction*, from the nation's

12   leader in multifamily housing." They further advertise having a "nationwide presence" and as

13   Equity Residential "success stories" "recently completed condo conversions" located in

14   Arizona, Florida and Washington. The Washington State projects advertised include the

15   "recently completed condo conversions" Equity "success stories" **Balaton,** Lake Forest Park,

16   Washington, Sterling Heights, Bellevue, Washington, and Pointe East Condominium Homes,

17   Redmond, Washington. Recently completed Timber Ridge Condominium in Woodinville,

18   Washington is another local apartment to condominium conversion project by Defendants

19   Equity. The Association believes there are additional Equity condominium conversion

20   projects in Washington State that are presently unknown to the Association and that will be

21   identified during the discovery process.

22         57.     The Association is informed and believes, and on that basis alleges, that

23   Defendants Equity and the Balaton Individuals knowingly conspired to and did devise and

24

COMPLAINT - 26

1    implement a nationwide business plan/pattern of conduct involving apartment to

2    condominium conversion projects to obtain money by means of false, fraudulent, unfair and

3    deceptive pretenses, representations, promises, and failures to disclose. That unlawful

4    plan/pattern of conduct was based on converting knowingly defect and damage ridden

5    apartments Defendants Equity owned and operated into condominiums for sale, and to

6    maximize Defendants Equity, the Balaton Individuals and perhaps other related entities

7    and/or individuals' financial gain by: 1) either not repairing known construction defects and

8    resultant water intrusion-caused physical damage in the projects they converted and sold and

9    in the projects they are currently in the process of converting and/or selling or by performing

10    grossly inadequate "band-aid" repairs of some of the defective conditions or otherwise

11    concealing the conditions as part of "the cover up and sell" scheme; 2) failing to disclose to

12    and actively deceiving the inspectors hired by the Equity Defendants to conduct the

13    inspections statutorily required for condominium conversion projects and the real estate

14    agents hired to market and sell the units the true quality and condition of the construction and

15    the habitability of the projects; and 3) including in the conversion projects' public offering

16    statements "rubber stamped" reports made on Defendants Equity's behalf that fail to disclose

17    known construction defects and resultant property damage at the projects converted and that

18    misstate with the intent to deceive potential unit purchasers the true condition of the projects.

19    Defendants Equity and the Balaton Individuals' implementation of the aforementioned

20    unlawful plan/pattern of conduct for their apartment to condominium conversion projects for

21    purposes of financial gain has included and currently still does include pre, during and post

22    unit sale activity and is repeated over and over again nationwide in the conversion projects

23    they undertake. The Balaton conversion project forms just one part of this larger unlawful

24    COMPLAINT - 27

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1  business scheme conceived, conspired and implemented by Defendants Equity and their

2  owners, directors, officers, principals, managers and employees to unfairly and deceptively

3  profit nationwide from unsuspecting purchasers of seriously defective and damaged

4  condominium units.

5       58.    Specifically with respect to the Balaton Project, Defendants Equity, by and

6  through the Balaton Individuals, operated the Project as an apartment for years before they

7  converted it to a condominium, and during that time and subsequently, were aware of

8  serious, wide-spread construction defects and resultant water intrusion-caused mold growth

9  and other property damage at the Project. In part, the Defendants were aware of the serious

10 defect related problems at the Project because of the numerous written and oral complaints

11 they received from apartment renters regarding the same during the time they managed the

12 Project as an apartment before it was converted to a condominium, including but not limited

13 to, complaints regarding leaking windows, roof leaks, excessive moisture build up and mold

14 growth in units, site drainage issues, leaking and deteriorating decks and venting problems.

15 Documents containing such complaints and identified as "Equity Residential Properties

16 Service Requests" were obtained from files informally produced to the Association by the

17 Equity Defendants. Additionally, documents appearing to be work orders, billing invoices,

18 and budgets for defect-related "cheap fix" repair work performed at the Project while

19 condominium units were being marketed and sold were also produced by Defendants Equity.

20 Below is a summary of some excerpts taken from the aforementioned documents produced

21 by Defendants Equity:

22          a. Equity Service Request #487171 – "Deck above leaks water when raining."

23          b. Equity Service Request #321030 – "water coming in windows."

24

COMPLAINT - 28

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1    c. Equity Service Request #2368819 – "mold on bed windows..."

2    d. Equity Service Request #2368831 – "Residents concerned w/moisture &

3    mold on windows – pls check seals and have mold cleaned...Cleaned mould

4    and caulked windows."

5    e. Equity Service Request #2368884 – "During rain storm water was leaking

6    from above into L/R window (by porch)."

7    f. Equity Service Request #6200644 – "Caulked the exterior window frame."

8    g. Equity Service Request #2368797 – "Water coming in sliding glass door

9    between frame & sheet rock."

10   h. Equity Service Request #6653646 – "Windows – mildew around

11   casings...Door – mold/mildew around interior frame."

12   i. Equity Service Request #1286284 – "Master bedroom – mold on

13   wall...Major undertaking...possible footing drains...inspected unit – mold

14   throughout unit in various stages..."

15   j. Equity Service Request #2368811 – "Mold in bedroom on right side –

16   under window and along wall right to bed."

17   k. Equity Service Request #2368964 – "mold along walls in bedrooms and

18   closets...painted mould areas."

19   l. Equity Service Request #2991310 – "Kilz mold & repaint."

20   m. Equity Service Request #1060118 – "slow leak in hall bathroom from the

21   roof...water is condensation...duct taped duct work to stop leaking."

22   n. Equity Service Request #2991496 – "Roof is leaking in kitchen in front of

23   fridge – ceiling damage."

24   COMPLAINT - 29

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1       o. Equity Service Request #5263569 – "Leak from ceiling during rain."

2       p. Equity Service Request #6737768 – "Leakage from roof from storm."

3       q. High Country Contractors, Inc. Field Order Invoice #00-1-1115 – "Fixed

4       handrail that had rotted away and Painted it."

5       r. High Country Contractors, Inc. field order invoice #00-1-1347 – "Remove

6       existing handrail, replace and paint."

7       s. Equity Preliminary Capital Budget for Cherry Hill [Apartments] - $15,000

8       for soffit replacement and repair; $79,000 for deck replacement and repair;

9       $35,000 for replacement and repair of "distorted and damaged vinyl siding

10       throughout"; $128,000 for roofing replacement and repair; $2,500 for site

11       drainage repairs;

12       t. High County Contractor's Inc. Field Order #6-324-21304 ; "Subject: Dry

13       Rot Repair…Complete removal of rot organism, treat remaining wood with

14       copper preserve. Replace/reinforce floor joists, plywood subfloor, sill plates

15       and studs. Replace drywall, texture and gypcrete. Paint…"

16       59.    Moreover, the Equity Defendants and the Balaton Individuals performed

17 defect, resultant damage and/or other repair work at the Project before, during and after the

18 conversion process was completed in locations where obviously defective construction

19 conditions and resultant water intrusion-caused property damage, including substantial

20 visible mold growth, existed. For example, during the conversion process a construction

21 crane fell through the roof of one of the buildings at the Project. As part of repairing the roof

22 damage caused by the crane, the Equity Defendants repaired damaged sheathing located in

23 the attic below. Directly adjacent to the new sheathing installed to repair the damage was old

24 COMPLAINT - 30

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   sheathing covered in mold that had been caused by warm moist air being pumped into the

2   attic space by a defective venting system (which had been haphazardly "repaired" by the

3   Defendants Equity in violation of applicable codes.) Additionally, Defendants Equity,

4   knowing that the decks at the Project were defectively constructed and were seriously

5   deteriorated due to the water intrusion that had occurred and was occurring as a result,

6   replaced and/or rebuilt some of the decks and left the rest alone, but for some short term

7   "fixes". Moreover, approximately 80% of the windows at Balaton were caulked, many

8   repeatedly, by Defendants Equity in a effort to avoid making costly necessary and proper

9   repairs of major problems and to instead perform "cheap fixes" and conceal major hidden

10   problems. Defendants Equity also performed other haphazard cheap fixes to siding, building

11   paper, sheathing, flashings, windows, vent ducting, site drains, and the interiors of units,

12   which clearly evidence their knowledge of defective construction conditions and resultant

13   water intrusion-caused mold growth and other property damage at those locations.

14          60.     In implementing their unlawful business plan/pattern of conduct for

15   condominium conversion projects specifically with respect to the Balaton Project,

16   Defendants Equity and the Balaton Individuals violated the CPA as above-described and by,

17   including but not limited to, the following: a) advertising and offering condominium units for

18   sale to the public and failing to disclose to unit purchasers and prospective unit purchasers

19   the existence of the known construction defects, including known deviations from the

20   Project's approved plans and specifications and known building code violations, and known

21   resultant property damage at the Project; b) falsely representing to unit purchasers and

22   prospective unit purchasers that there were no known physical hazards at the Project; c)

23   falsely representing to unit purchasers and prospective unit purchasers that all structural

24   COMPLAINT - 31

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1    components and mechanical systems of all buildings were substantially completed; d) falsely

2    representing to unit purchasers and prospective unit purchasers that the buildings are as

3    originally designed; e) falsely representing to unit purchasers and prospective unit purchasers

4    that the Project is in good condition and well maintained; f) falsely representing to unit

5    purchasers and prospective unit purchasers that the workmanship is good and the materials

6    used were appropriate; g) falsely representing to unit purchasers, potential unit purchasers

7    and the public at large that "quality construction" is an "advantage to Equity Residential

8    condominiums; h) failing to disclose to the Association and to unit owners the conflicts of

9    interest Defendants Equity had in being both the declarants/sellers of the Project and the

10   Project's property manager and the controller of the Association's Board of Directors; i)

11   failing to disclose to the Association and to unit owners the financial interest Defendants

12   Equity had in not making the necessary defect and damage repairs at the Project and in

13   concealing the defects and damage from the Association and unit owners in an effort to save

14   money and avoid warranty claims during the time they managed the Project and controlled

15   the Association; and j) grossly understating in the Association's initial budget contained in

16   the Public Offering Statement the reserves needed to properly repair and maintain the

17   Project. Defendants Equity and the Balaton individuals further violated the CPA by failing to

18   disclose to the Association that assets were being distributed from Balaton, and perhaps other

19   Equity Defendants, to other entities and/or individuals, and that as a result, Balaton was

20   being rendered insolvent and/or financially unable to properly respond to Association and/or

21   unit owner warranty claims. The aforementioned unlawful actions and failures to act of

22   Defendants Equity and the Balaton Individuals had the capacity to and did in fact deceive a

23   substantial portion of the public at large, are capable of repetition, have been repeated in

24   COMPLAINT - 32

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   Washington and other states, and are currently being repeated in Washington and other

2   states. The CPA violations of Defendants Equity and the Balaton Individuals have caused

3   injury and continue to cause injury to the Association, its unit owner members and the public

4   at large.

5          61.     As a direct and proximate result of the CPA violations described above, the

6   unit owners and the Association have been damaged in an amount to be proved at trial. Such

7   damages include, among other things, the cost of repairing the defects and damage, including

8   the necessary investigative costs and repair scope and cost of repair estimate development

9   costs, and the loss of use suffered by unit owners as a result of the defects and damage and

10  their repair, relocation expenses, diminution in market value of the units and Project as

11  whole, consequential damages, and any and all other foreseeable damages. Additionally,

12  pursuant to RCW 19.86.090, the Association is entitled to its reasonable attorneys' fees and

13  all other costs/expenses incurred in investigating and prosecuting this action. The Association

14  is also entitled to an award of *a minimum of $10,000 per unit in treble damages for each*

15  *and every of the 108 Project unit owners.*

16          **H.  Eighth Claim – Against Defendants Equity and the Balaton**
            **Individuals for Fraudulent Concealment**

17

18          62.     The Association incorporates herein by reference Paragraphs 1-61 of this

19  Complaint.

20          63.     This claim is being made against the Balaton Individuals to the extent they

21  knowingly participated in, cooperated in the doing of, or directed that the alleged wrongful

22  acts of Defendants Equity be committed. *Johnson v. Harrigan-Peach Land Dev. Co.*, 79

23  Wn.2d 745, 752, 489 P.2d 923 (1971)

24          64.     Despite having an abundance of knowledge, as described above, about the

COMPLAINT - 33

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1    existence of serious construction defects, water intrusion, mold growth and other resultant

2    property damage at the Project, Defendants Equity and the Balaton Individuals marketed and

3    sold Project units without ever disclosing anything about the defects or damage to unit

4    purchasers. Many of the defects and much of the damage at issue is hidden within the

5    building envelope and other building systems and consequently unit purchasers were

6    unaware of the problems and a reasonable inspection by them would not have disclosed the

7    same.  The concealed defects and damage at issue are severe and substantially reduces the

8    Project's value. Because Defendants Equity and the Balaton Individuals failed to inform unit

9    purchasers of the hidden defects and damage at the Project and instead concealed the same

10    from them, they are liable for fraudulent concealment.

11         65.     As a direct and proximate result of the fraud described above, the unit owners

12    and the Association have been damaged in an amount to be proved at trial. Such damages

13    include, among other things, the cost of repairing the defects and damage, including the

14    necessary investigative costs and repair scope and cost of repair estimate development costs,

15    and the loss of use suffered by unit owners as a result of the defects and damage and their

16    repair, relocation expenses, diminution in market value of the units and Project as whole, the

17    difference between the actual value of the units and the Project as a whole and what the units

18    and Project would have been worth without the fraudulent concealment, consequential

19    damages, and any and all other foreseeable damages. Additionally, pursuant to the

20    Declaration, the Association is entitled to its reasonable attorneys' fees and all other

21    costs/expenses incurred in investigating and prosecuting this action.

22              **I.  Ninth Claim -- Against Defendants Equity for Liability under**
                         **RCW 64.34.405, 64.34.410 and 64.34.415**

23

24         66.     The Association incorporates herein by reference Paragraphs 1-65 of this

COMPLAINT - 34

STANISLAW ASHBAUGH, LLP
LAWYERS

701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   Complaint.

2       67.   Pursuant to RCW 64.34.405(3), "[a] declarant or dealer shall be liable for any

3   misrepresentation contained in the public offering statement or for any omission of material

4   fact therefrom if the declarant or dealer had actual knowledge of the misrepresentation or

5   omission *or, in the exercise of reasonable care, should have known* of the misrepresentation

6   or omission.

7       68.   Pursuant to RCW 64.34.410(1)(y), a public offering statement shall include

8   "[a] list of any physical hazards known to the declarant which particularly affect the

9   condominium or the immediate vicinity in which the condominium is located and which are

10   not readily ascertainable by the purchaser."

11      69.   Pursuant to RCW 64.34.415(1)(a), "[t]he public offering statement of a

12   conversion condominium shall contain, in addition to the information required by RCW

13   64.34.410, [e]ither a copy of a report prepared by an independent, licensed architect or

14   engineer, or a statement by the declarant based on such report, which report or statement

15   describes, to the extent reasonably ascertainable, the present condition of all structural

16   components and mechanical and electrical installations material to the use and enjoyment of

17   the condominium.

18      70.   Pursuant to RCW 64.34.405, Defendants Equity are liable for

19   misrepresentations in the Project's Public Offering Statement, including but not limited to,

20   the following: a) their misrepresentation that there were no physical hazards at the Project

21   despite the existence of serious and systemic construction defects, including defects in

22   weather-proofing, structural and life safety systems, and resultant water intrusion and

23   moisture damage, including mold growth, which were known to them and which were

24   COMPLAINT - 35

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   therefore required to be disclosed under RCW 64.34.410; b) their failure to provide a report

2   by an independent, licensed architect or engineer based on an inspection of the Project that

3   *reasonably* ascertained the condition of all structural components and mechanical and

4   electrical installations material to the use and enjoyment of the condominium, and instead

5   providing a report based on a grossly inadequate and unreasonable visual-only inspection; c)

6   their misrepresentations that all structural components and mechanical systems of all

7   buildings are substantially completed, that the Project is in good condition, well maintained,

8   and that the workmanship is good and the materials used were appropriate; and d) their

9   misrepresentations about the cost to operate and repair and maintain the Project. Had the

10  Project's Public Offering Statement contained the aforementioned negligent

11  misrepresentations, the Association and its unit owner members would have been able to

12  avert property damage that occurred and is currently occurring as a result.

13          71.     As a direct and proximate result of the misrepresentations described above,

14  the unit owners and the Association have been damaged in an amount to be proved at trial.

15  Such damages include, among other things, the cost of repairing the defects and damage,

16  including the necessary investigative costs and repair scope and cost of repair estimate

17  development costs, and the loss of use suffered by unit owners as a result of the defects and

18  damage and their repair, relocation expenses, diminution in market value of the units and

19  Project as whole, consequential damages, and any and all other foreseeable damages.

20  Additionally, pursuant to the Declaration, the Association is entitled to its reasonable

21  attorneys' fees and all other costs/expenses incurred in investigating and prosecuting this

22  action.

23

24  COMPLAINT - 36

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

**J.  Tenth Claim – Against Defendants Equity and the Balaton Individuals for Violation of RCW 19.40.041 and 19.40.051**

72.     The Association incorporates herein by reference Paragraphs 1-71 of this Complaint.

73.     The Association is informed and believes, and on that basis alleges, that Defendants Equity and the Balaton Individuals have engaged in improper conveyances in violation of RCW 19.40.041 and 19.40.051 in that:

a.      They have transferred and/or caused to be transferred assets from Balaton to the other Equity Defendants and/or to the Balaton Individuals and/or possibly other related business entities and/or individuals without receiving a reasonably equivalent value in exchange for the transfer or obligation and Balaton: (i) was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed *or reasonably should have believed* that it would incur debts beyond its ability to pay them as they became due; and/or

b.      The transfers were made or the obligations were incurred without receiving a reasonably equivalent value in exchange for the transfer or obligation and Balaton was insolvent at the time or became insolvent as a result of the transfer or obligation; and/or

c.      The transfers were made to an insider for an antecedent debt, Balaton was insolvent at the time, and the insider had reasonable cause to believe that Balaton was insolvent.

74.     The creditor Association has been harmed by the above-described transfers in that they have rendered Balaton asset-less or without assets sufficient to honor its warranty obligations to and satisfy the Association's claims against it.

COMPLAINT - 37

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

75.     As a result of the improper conveyances, the Association is entitled to all of the remedies set forth in RCW 19.40.071 and 19.40.081, including but not limited to:

a.     Avoidance of the transfer or obligation to the extent necessary to satisfy the Association's claim; and

b.     An injunction against further disposition of the assets transferred or of other property.

### K.  Eleventh Claim -- Against Defendants Equity for Mutual Mistake

76.     The Association incorporates herein by reference Paragraphs 1-75 of this Complaint.

77.     At the time of the sale of all the units at the Project, each and every unit purchaser believed that they were purchasing units that had been constructed in accordance with the Project's approved plans and specifications and the applicable building codes. Because that belief was mistaken, in that the Project is in fact riddled with deviations from its approved plans and specifications and violations of the applicable building codes, and because Defendants Equity never disclosed those deviations and violations to unit purchasers, each and every unit purchaser entered into their unit purchase and sale agreements mistaken about material facts regarding the true construction and condition of the Project. If and to the extent Defendants Equity also lacked knowledge regarding the aforementioned deviations and violations, they too entered into the unit purchase and sale agreements mistaken about material facts regarding the same. If either the unit purchasers or Defendants Equity had been aware of their mistaken belief of material facts regarding the deviations from the Project's approved plans and specifications and violations of the applicable building code violations that existed at the Project at the time the units were being

COMPLAINT - 38

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1   sold, neither would have entered into the unit purchase and sale agreements.  Consequently,

2   unit owners are entitled to damages and/or equitable relief, including rescission of their

3   purchase and sale agreements.

### L.  Twelfth Claim – Against Defendants Equity for Alter Ego/Corporate Disregard Liability

4

5      78.    The Association incorporates herein by reference Paragraphs 1-77 of this

6   Complaint.

7      79.    The Association is informed and believes, and on that basis, alleges that

8   Balaton is an alter ego of Equity and/or ERP and/or Equity Residential and/or that Equity and

9   ERP and/or Equity Residential are alter egos of one another and that their separate corporate

10  form should be disregarded for the following reasons:

11         a.     The liability-causing activity at issue did not occur only for the benefit of

12                Balaton or Equity.

13         b.     Balaton has been "gutted" and left without funds by the other Equity

14                Defendants controlling it in order to avoid actual or potential liability.

15         c.     Balaton was inadequately capitalized and maintained insubstantial assets and

16                was just another one of the hollow-shell entities created, deliberately grossly

17                under-funded, and then gutted by the Equity Defendants as part of their

18                nationwide unlawful planned pattern of conduct to profit from turning

19                knowingly defect and damage ridden apartments into condominium

20                conversions for sale. Defendants Equity, the Balaton Individuals and possibly

21                other related entities and/or individuals used Balaton and the other single

22                project entities it used for its condominium conversion scheme purely as

23                "front companies" to serve as "paper declarants" for the projects and as unit

24  COMPLAINT - 39

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1  sellers. Then, at the conclusion of the projects, the shell, paper declarant front

2  companies would be drained of any and all assets held by them and would be

3  deliberately left with no money to honor their warranty and other obligations

4  owed to project unit purchasers and to the various condominium associations.

5  d.  Balaton was a "shell," an "artificial corporate device," and a "hollow

6  instrument or conduit" for conducting a single venture or business and was

7  "puppeteered," directed and controlled by the other Equity Defendants solely

8  for the purpose of maximizing profit, averting legitimate claims and

9  minimizing liability with respect to that single venture or business;

10  e.  Balaton's allegedly separate shell corporate form was intentionally used by

11  the other Equity Defendants to violate or evade duties and/or other legal

12  obligations owed to the Association and its unit owner members;

13  f.  They have commingled funds and other assets;

14  g.  They have failed to segregate funds of the allegedly separate entities.

15  h.  They have transferred funds and/or other assets, including the Project as a

16  whole and Project units, between themselves with no substantial business

17  justification and without adequate compensation;

18  i.  They have allowed the staff and other assets of one or more of them to be used

19  by the other(s) without adequately compensating the other alter ego(s) whose

20  staff and other assets have been used;

21  j.  They have treated the assets of one another as their own;

22  k.  They have failed to maintain proper or adequate corporate records;

23

24

COMPLAINT - 40

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1    l.    The equitable ownership of the allegedly separate corporations was in the

2          same entity or individual;

3    m.    They shared the same members, directors, officers and supervising

4          employees;

5    n.    They shared the same office;

6    o.    They failed to maintain an arms' length relationship with each other;  and

7    p.    It would be unjust and inequitable to allow them to use their allegedly

8          separate corporate status as a shield to insulate them from liability for their

9          obligations owed to the Association and the unit owners.

10                          **IV.  PRAYER FOR RELIEF**

11   WHEREFORE, the Association prays for judgment as follows:

12   1.    Against Defendants Equity collectively, and each of them, for damages and/or

13   equitable relief according to proof for:

14         a.    Breach of Express and Implied Warranty under the WCA;

15         b.    Breach of Purchase and Sale Agreement Contracts;

16         c.    Breach of Property/Real Estate Management Contract;

17         d.    Negligent Property/Real Estate Management;

18         e.    Breach of Fiduciary Duty;

19         f.    Liability under RCW 64.34.344 and the Declaration;

20         g.    Violation of the CPA, *including treble damages of a minimum of*

21               *$10,000 per unit for each and every one of the 108 Project unit*

22               *owners, and injunctive relief to enjoin any further CPA violations*

23               *pursuant to RCW 19.86.090;*

24   COMPLAINT - 41

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1    j.    Fraudulent Concealment;

2    k.    Liability under RCW 64.34.405, 64.34.410 and 64.34.415;

3    l.    Liability under RCW 19.40.041 and 19.40.051, including avoidance of

4          all improper transfers or obligations to the extent necessary to satisfy

5          the Association's claims and for an injunction against further

6          disposition of the assets transferred or of other property;

7    m.    Mutual Mistake;

8    n.    Alter-Ego/Corporate Disregard Liability;

9    o.    For taxing of costs, including all attorneys' fees and all other

10         costs/expenses incurred; and

11   p.    Such other and further relief that the Court may deem just and

12         equitable.

13   2.   Against Defendants Attleson, Wiemer and Himmerich, collectively, and each

14        of them, for damages according to proof for:

15   a.    Breach of Fiduciary Duty;

16   b.    For taxing of costs, including all attorneys' fees and all other

17         costs/expenses incurred; and

18   c.    Such other and further relief that the Court may deem just and

19         equitable.

20   3.   Against Defendants the Balaton Individuals for damages according to proof

21        for:

22   a.    Violation of the CPA, *including treble damages of a minimum of*

23

24   COMPLAINT - 42

**STANISLAW ASHBAUGH, LLP**
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

1    *$10,000 per unit for each and every one of the 108 Project unit*

2    *owners, and injunctive relief to enjoin any further CPA violations*

3    *pursuant to RCW 19.86.090;*

4        b.    Fraudulent Concealment;

5        c.    Liability under RCW 19.40.041 and 19.40.051, including avoidance of

6    all improper transfers or obligations to the extent necessary to satisfy

7    the Association's claims and for an injunction against further

8    disposition of the assets transferred or of other property;

9        d.    For taxing of costs, including all attorneys' fees and all other

10    costs/expenses incurred; and

11        e.    Such other and further relief that the Court may deem just and

12    equitable.

13    4.    For Declaratory Judgment as to all Defendants that the cap on treble damages

14    under the CPA is unconstitutional under Washington law.

15    DATED this 1st day of May, 2007.

16    STANISLAW ASHBAUGH, LLP

19    John C. Siegel, WSBA No. 29866
Attorneys for the Association

24    COMPLAINT - 43

STANISLAW ASHBAUGH, LLP
LAWYERS
701 Fifth Avenue, Suite 4400
Seattle WA 98104-7012
(206) 386-5900 Fax (206) 344-7400

62

# Exhibit 1

20031210002550.050

SCHEDULE B

BALATON CONDOMINIUM

Unit Data, Allocated Interests, Parking Assignments

| Building | Unit | Unit Data* | Level | Unit Area (Sq Ft) | CEL ICE[1] | Parking[2] | Voting |
|---|---|---|---|---|---|---|---|
| A | 101 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| A | 102 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| A | 103 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| A | 104 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| B | 105 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| B | 106 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| B | 107 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| B | 108 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| C | 109 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| C | 110 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| C | 111 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| D | 112 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| D | 113 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| D | 114 | 2BR, 1BA, F | 1 | 832 | 0 92 | | 1 |
| D | 115 | 2BR, 1BA, F | 1 | 832 | 0 92 | | 1 |
| E | 116 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| E | 117 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| E | 118 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| E | 119 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| E | 120 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| G | 121 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| G | 122 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| G | 123 | 2BR, 1BA, F | 1 | 832 | 0 92 | | 1 |
| G | 124 | 2BR, 1BA, F | 1 | 832 | 0 92 | | 1 |
| H | 125 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| H | 126 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| H | 127 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| H | 128 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| J | 129 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| J | 130 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| J | 131 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| J | 132 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| K | 133 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| K | 134 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| K | 135 | 2BR, 2BA, F | 1 | 910 | 1 00 | | 1 |
| K | 136 | 2BR, 1BA, F | 1 | 847 | 0 93 | | 1 |
| L | 137 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| L | 138 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| L | 139 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| L | 140 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| L | 141 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| L | 142 | 1BR, 1BA, F | 1 | 704 | 0 78 | | 1 |
| A | 201 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| A | 202 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| A | 203 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| A | 204 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |

64

| Building | Unit | Unit Data* | Level | Unit Area (Sq Ft) | CEL ICE[1/] | Parking[2/] | Voting |
|----------|------|-----------|-------|-------------------|-------------|-------------|--------|
| B | 205 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| B | 206 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| B | 207 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| B | 208 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| C | 209 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| C | 210 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| C | 211 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| D | 212 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| D | 213 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| D | 214 | 2BR, 1BA, F | 2 | 832 | 0 92 | | 1 |
| D | 215 | 2BR, 1BA, F | 2 | 832 | 0 92 | | 1 |
| E | 216 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| E | 217 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| E | 218 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| E | 219 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| E | 220 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| G | 221 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| G | 222 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| G | 223 | 2BR, 1BA, F | 2 | 832 | 0 92 | | 1 |
| G | 224 | 2BR, 1BA, F | 2 | 832 | 0 92 | | 1 |
| H | 225 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| H | 226 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| H | 227 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| H | 228 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| J | 229 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| J | 230 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| J | 231 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| J | 232 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| K | 233 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| K | 234 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| K | 235 | 2BR, 2BA, F | 2 | 910 | 1 00 | | 1 |
| K | 236 | 2BR, 1BA, F | 2 | 847 | 0 93 | | 1 |
| L | 237 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| L | 238 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| L | 239 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| L | 240 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| L | 241 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| L | 242 | 1BR, 1BA, F | 2 | 704 | 0 78 | | 1 |
| C | 309 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| C | 310 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| C | 311 | 2BR, 1BA, F | 3 | 847 | 0 93 | | 1 |
| D | 312 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| D | 313 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| D | 314 | 2BR, 1BA, F | 3 | 832 | 0 92 | | 1 |
| D | 315 | 2BR, 1BA, F | 3 | 832 | 0 92 | | 1 |
| G | 321 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| G | 322 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| G | 323 | 2BR, 1BA, F | 3 | 832 | 0 92 | | 1 |
| G | 324 | 2BR, 1BA, F | 3 | 832 | 0 92 | | 1 |
| H | 326 | 2BR, 1BA, F | 3 | 910 | 1 00 | | 1 |
| H | 327 | 2BR, 1BA, F | 3 | 910 | 1 00 | | 1 |
| J | 329 | 2BR, 1BA, F | 3 | 847 | 0 93 | | 1 |

12/5/2003 8 28 AM                    SCHEDULE B, PAGE 2 OF 3

| Building | Unit | Unit Data* | Level | Unit Area (Sq Ft) | CEL ICE[1] | Parking[2] | Voting |
|---|---|---|---|---|---|---|---|
| J | 330 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| J | 331 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| J | 332 | 2BR, 1BA, F | 3 | 847 | 0 93 | | 1 |
| K | 333 | 2BR, 1BA, F | 3 | 847 | 0 93 | | 1 |
| K | 334 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| K | 335 | 2BR, 2BA, F | 3 | 910 | 1 00 | | 1 |
| L | 338 | 1BR, 1BA, F | 3 | 704 | 0 83 | | 1 |
| L | 339 | 1BR, 1BA, F | 3 | 704 | 0 83 | | 1 |
| L | 340 | 1BR, 1BA, F | 3 | 704 | 0 83 | | 1 |
| L | 341 | 1BR, 1BA, F | 3 | 704 | 0 83 | | 1 |
| TOTALS. | | | | 90,636 | 100 00 | | 108 |

* Legend

  BR  -  bedroom

  BA  -  bathroom

  F   -  wood firoplace

[1] Common Expense Liability (CEL) and interest in Common Elements (ICE) is based on relative area of Units

[2] To be assigned by amendment

# EXHIBIT B

1

2

3

4

5

6

7

8

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

9

BALATON CONDOMINIUM ASSOCIATION, a
Washington nonprofit corporation,

**Honorable Michael Hayden**

10

Plaintiff,

No. 07-2-14061-1 SEA

11

v.

**NOTICE OF FILING REMOVAL
OF CIVIL ACTION**

12

BALATON CONDOMINIUM, LLC, a Delaware
limited liability company; EQUITY
RESIDENTIAL PROPERTIES MANAGEMENT
CORP., a Delaware corporation; ERP
OPERATING LIMITED PARTNERSHIP, an
Illinois limited partnership; EQUITY
RESIDENTIAL, a Maryland real estate investment
trust; DAVID ATTLESON, individually, and
JANE DOE ATTLESON, individually, and the
marital community composed thereof; SUSAN
WIEMER, individually, and JOHN DOE
WIEMER, individually, and the marital
community composed thereof; AMY
HIMMERICH, individually, and JOHN DOE
HIMMERICH, individually, and the marital
community composed thereof; TAMMY
SCULLY, individually, and JOHN DOE
SCULLY, individually, and the marital community
composed thereof; MARK GOLDSTEIN,
individually, and JANE DOE GOLDSTEIN,
individually, and the marital community composed
thereof; MICHAEL MCHUGH, individually, and
JANE DOE MCHUGH, individually, and the
marital community composed thereof; NATALIA
PICOULAS, individually, and JOHN DOE
PICOULAS, individually, and the marital
community composed thereof; JOHN DRYK,
individually, and JANE DOE DRYK, individually,
and the marital community composed thereof;

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF FILING REMOVAL OF CIVIL ACTION - 1

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

50814628.1

1    MARK PARRELL, individually, and JANE DOE
     PARRELL, individually, and the marital
2    community composed thereof; ROBERT
     TANAKA, individually, and JANE DOE
3    TANAKA, individually, and the marital
     community composed thereof; BARBARA
4    SHUMAN, individually, and JOHN DOE
     SHUMAN, individually, and the marital
5    community composed thereof; and DOES 1-50,

6       Defendants.

7

   TO:         THE CLERK OF THE COURT:

8

   AND TO:     John C. Siegel, Attorney for Plaintiff

9

10         Notice is hereby given that Defendants, pursuant to 28 U.S.C. § 1446(d), have removed

   this case to the United States District Court for the Western District of Washington at Seattle. A
11

   true and accurate copy of the Notice of Removal of Civil Action is attached hereto. This
12

   removal terminates this Court's jurisdiction and all proceedings in this forum.
13

14         DATED this 21st day of May, 2007.

15                               FOSTER PEPPER PLLC

16

17                               Jeffrey G. Frank WSBA #16287
                              Gregory A.V. Clark, WSBA #28832
18                               Attorneys for Defendants Balaton
                              Condominium, LLC, Equity Residential
19                               Properties Management Corp., ERP Operating
                              Limited Partnership, and Equity Residential
20

21                               HARPER | HAYES PLLC

22

23                               Todd C. Hayes, WSBA No. 26361
24                               Gregory L. Harper, WSBA No. 27311
                              Attorneys for Defendants Balaton
25                               Condominium, LLC, Equity Residential
                              Properties Management Corp., ERP Operating
26                               Limited Partnership, and Equity Residential

NOTICE OF FILING REMOVAL OF CIVIL ACTION - 2

1

## Certificate of Service

2      The undersigned certifies that on Monday, May 21, 2007, I caused to be served the

3   foregoing document to:

4

5   John C. Siegel                    ☒      via hand delivery
    Jesse D. Miller                   ☐      via first class mail, postage prepaid
    Stanislaw Ashbaugh, LLP           ☐      via facsimile
6   4400 Columbia Center              ☒      via e-mail
    701 Fifth Avenue
7   Seattle, WA  98104-7012
    BUSINESS    (206) 386-5900
8   FAX   (206) 344-7400

9   Counsel for Balaton
    Condominium Association
10

11

       I declare under penalty of perjury under the laws of the State of Washington on  Monday,
12
    May 21, 2007, at Seattle, Washington.
13

14                                             Elen A. Sale

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF FILING REMOVAL OF CIVIL ACTION - 3

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

50814628.1